2009 WY 125

**Jason Eugene MILLER, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

Nos. S–08–0190, S–08–0191.

Supreme Court of Wyoming.

Oct. 13, 2009.

Representing Appellant: Michael H. Reese, Michael H. Reese, PC, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Alan Johnson, Director, Prosecution Assistance Program; Eric K. Thompson, Student Director; Cortney Kitchen, Student Intern.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1] In this consolidated appeal, Jason Miller challenges his convictions on several counts of illegal possession of controlled substances. He contends the district court erred in its denial of his motion to suppress evidence in each case. He also claims a violation of his right to a speedy trial in both cases. We find no error and affirm.

## ISSUES

[¶2] Mr. Miller presents three issues:

1. Was the court's denial of Mr. Miller's motion to suppress in docket no. 6171 correct in light of the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution?

2. Was the court's denial of Mr. Miller's motion to suppress in docket no. 6192 correct in light of the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution?

3. Was there a violation of Mr. Miller's speedy trial rights pursuant to both the United States Constitution and the Wyoming Constitution and law?

### FACTS

[¶ 3] On October 18, 2006, Fremont County Sheriff's deputies and Wyoming Division of Criminal Investigation (DCI) agents executed a search warrant at the home of Randy Lowrey. Officers discovered marijuana and methamphetamine during the search. Mr. Lowrey identified Mr. Miller as one of his sources for the drugs. He told officers that he had purchased methamphetamine from Mr. Miller the night before and that he had also purchased marijuana from him. He also informed officers that he recently observed a large amount of controlled substances at Mr. Miller's home and provided details regarding where, in the residence, the drugs could be found. During the interview, Mr. Lowrey received two telephone calls from Mr. Miller. Mr. Lowrey did not answer the calls, but he recognized the incoming phone number and advised officers that Mr. Miller was the caller. He told officers that Mr. Miller lived nearby.

[¶ 4] Law enforcement officers immediately went to Mr. Miller's home. They found Mr. Miller in his vehicle in front of his residence. Officers asked him to exit the vehicle and he complied. The officers then handcuffed him and placed him in a patrol car. At that point, three officers performed a "sweep" of Mr. Miller's home to determine if anyone else was inside the residence. After discovering no one in the home, officers exited the residence and waited outside while one of the DCI agents left to obtain a search warrant. According to the officers, the "sweep" was completed in approximately two minutes. Following the sweep, Mr. Miller's handcuffs were removed and he was released from the patrol car. Law enforcement officers questioned Mr. Miller further before allowing him to leave. In total, Mr. Miller was detained for approximately forty-five minutes.

[¶ 5] In the meantime, officers maintained a perimeter around the home and waited for a search warrant. The DCI agent was able to obtain a search warrant for Mr. Miller's home and vehicle. Upon execution, officers discovered 7 ounces of marijuana, 3.4 grams of methamphetamine, and assorted drug paraphernalia in Mr. Miller's vehicle. In the home, officers found 34 ounces of packaged marijuana, an undetermined amount of loose marijuana, psilocybin mushrooms, and additional drug paraphernalia. Mr. Miller was charged with three criminal counts: felony possession of marijuana with intent to deliver in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii), misdemeanor possession of psilocybin in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(A), and misdemeanor possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(C).[1] This case was docketed in the district court as criminal case no. 6171. Mr. Miller was released on bond.

---

1. Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis 2005) reads as follows:

 (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

 (ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both[.]

 Wyo. Stat. Ann. §§ 35–7–1031(c)(i)(A) and (c)(i)(C) read, in pertinent part, as follows:

 (c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection:

 (i) And has in his possession a controlled substance in the amount set forth in this paragraph is guilty of a misdemeanor punishable by imprisonment for not more than twelve (12) months, a fine of not more than one thousand dollars ($1,000.00), or both. . . . For purposes of this paragraph, the amounts of a controlled substance are as follows:

 (A) For a controlled substance in plant form, no more than three

 (3) ounces;

 . . .

 (C) For a controlled substance in powder or crystalline form, no more than three (3) grams[.]

[¶ 6] After his release, a Fremont County Sheriff's Deputy received an anonymous tip that Mr. Miller and his fiancée [2] had driven to Phoenix, Arizona and purchased controlled substances. A few days later, the deputy saw Mr. Miller and stopped to talk with him. Relying upon one of the conditions of Mr. Miller's bond, the deputy requested that Mr. Miller submit to a urinalysis test. Mr. Miller consented to the test. He tested positive for marijuana and cocaine. During this encounter, Mr. Miller admitted he had traveled to Arizona to visit his father but denied purchasing drugs.

[¶ 7] The deputy then sought out Mr. Miller's fiancée. After receiving information that she was seen going to her mother's house, he attempted to contact her there. When he arrived at the residence, the deputy observed a vehicle in the driveway matching the informant's description of the car driven to Arizona. The deputy spoke with the fiancée's mother who told him her daughter had left the car and its keys at the house while she and her father traveled to Cheyenne for a medical appointment. In response to an inquiry from the deputy, mother advised that the vehicle was registered in her name and consented to a search of the vehicle. Before searching the vehicle, the deputy asked that a "drug detection canine" be dispatched. Upon arrival, the dog alerted to the vehicle. The deputy then searched the vehicle and found drug paraphernalia and more than 20 ounces of marijuana. Mr. Miller was not present during the search. He was subsequently arrested and charged with conspiracy to distribute marijuana in violation of Wyo. Stat. Ann. §§ 35–7–1031(a)(ii) and 35–7–1042, and possession of marijuana with intent to deliver in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii).[3] This case was docketed in the district court as criminal case no. 6192.

[¶ 8] During the course of the legal proceedings, Mr. Miller had six attorneys. Some of these attorneys withdrew at Mr. Miller's request. As a result of the numerous changes in Mr. Miller's representation, as well as other factors, including a court-ordered psychiatric evaluation, both proceedings were delayed considerably. Mr. Miller filed a written waiver of his right to speedy trial on two occasions.

[¶ 9] Mr. Miller moved to suppress evidence derived from the searches in both cases. In each case, the court denied the motion. A jury found Mr. Miller guilty of all three counts charged in docket no. 6171. He appealed that conviction. In docket no. 6192, Mr. Miller entered a conditional plea of *nolo contendere,* reserving the right to appeal the denial of his motion to suppress. He subsequently filed an appeal in that case. We consolidated the appeals.

## DISCUSSION

### A. Motions to Suppress

#### *Standard of Review*

[¶ 10] This Court reviews a district court's ruling on a motion to suppress evidence *de novo,* giving deference to the trial court's findings of fact, unless they are clearly erroneous. *Gompf v. State,* 2005 WY 112, ¶ 14, 120 P.3d 980, 984–85 (Wyo.2005). When a claim is raised for the first time on appeal, the appellant has the burden of establishing plain error. *Strange v. State,* 2008 WY 132, ¶ 4, 195 P.3d 1041, 1043 (Wyo.2008). To establish plain error, Mr. Miller must show: (1) the record is clear about the incident alleged as error; (2) there was a transgression of a clear and unequivocal rule of law; and (3) he was denied a substantial right which materially prejudiced him. *Duke*

---

**2.** It is not necessary to identify this individual by name. The anonymous tip to the deputy identified her as Mr. Miller's girlfriend. However, in the motion to suppress, she was identified as his fiancée. Mr. Miller contends that the nature of this relationship supports his assertion that he had a reasonable expectation of privacy in her vehicle. We will refer to her as his fiancée.

**3.** Wyo. Stat. Ann. § 35–7–1042 reads as follows:

> Any person who attempts or conspires to commit any offense under this article within the state of Wyoming or who conspires to commit an act beyond the state of Wyoming which if done in this state would be an offense punishable under this article, shall be punished by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense the commission of which was the object of the attempt or conspiracy.

*v. State,* 2009 WY 74, ¶ 22, 209 P.3d 563, 571 (Wyo.2009).

### Docket No. 6171

 [¶ 11] Mr. Miller contends the sweep of his home violated his Fourth Amendment right to be free from unreasonable searches because officers entered his home without a search warrant.[4] There are "well-delineated exceptions to the warrant requirement." *Vassar v. State,* 2004 WY 125, ¶ 19, 99 P.3d 987, 995 (Wyo.2004). Among them is the exception for exigent circumstances. *Pena v. State,* 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo.2004). In order for the exception to apply, the government must establish that the officers had probable cause supporting the search and that exigent circumstances made it impracticable to obtain a warrant before conducting the search. *Id.* Among the exigent circumstances justifying a warrantless search is a need "to prevent the imminent destruction of evidence." *Id.; Jones v. State,* 902 P.2d 686, 691 (Wyo. 1995).

[¶ 12] We applied the exigent circumstances exception to a warrantless entry in *Rideout v. State,* 2005 WY 141, 122 P.3d 201 (Wyo.2005). In *Rideout,* officers went to the defendants' residence to investigate drug-related activities. As they exited their vehicles, they smelled burning marijuana coming from the residence, and the officers realized "their presence was known to the occupants." *Id.,* ¶¶ 5, 24, 122 P.3d at 203, 208. At that point, officers decided to enter the house and secure it to prevent the destruction of evidence before seeking a search warrant. *Id.,* ¶ 7, 122 P.3d at 203. We affirmed the denial of the motion to suppress and found no Fourth Amendment violation because: (1) officers possessed probable cause that a crime was being committed within the residence; (2) exigent circumstances justified the warrantless entry to secure the residence and prevent destruction of any evidence; and

(3) the officers refrained from searching the home until they had authorization—either in the form of consent or a search warrant. *Id.,* ¶ 25, 122 P.3d at 208. The district court found similar justification in this case.

[¶ 13] The district court determined that Mr. Lowrey was a reliable and credible witness and that the information he provided was sufficient to establish probable cause. When an officer receives information from an informant, it must be evaluated under the totality of the circumstances. *Holzheuser v. State,* 2007 WY 160, ¶¶ 8, 10, 169 P.3d 68, 74–76 (Wyo.2007). This Court has held that certain factors are relevant in determining whether an informant's statements contain the requisite indicia of veracity and basis of knowledge, including:

> whether the informant has previously given reliable information to law enforcement; whether the statements of the informant are against the informant's penal interests; whether the informant acquired knowledge of the events through firsthand observation; whether the amount of detail provided is sufficient to make the statement self-verifying; the interval between the date of the events and the law enforcement officer's application for a warrant; and the extent to which law enforcement officers have corroborated the informant's statements.

*Schirber v. State,* 2006 WY 121, ¶ 8, 142 P.3d 1169, 1173 (Wyo.2006) (citing *Illinois v. Gates,* 462 U.S. 213, 233–34, 103 S.Ct. 2317, 2329–30, 76 L.Ed.2d 527 (1983); *United States v. Harris,* 403 U.S. 573, 583–85, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723, 734 (1971); *United States v. Mykytiuk,* 402 F.3d 773, 776–77 (7th Cir.2005); *United States v. Zayas–Diaz,* 95 F.3d 105, 111 (1st Cir.1996)).

 [¶ 14] Many of these indicia of reliability are present in this case. Mr. Lowrey told law enforcement officers that he had purchased methamphetamine from Mr. Mil-

---

4. Although Mr. Miller formulates his statement of the issues in terms of the Wyoming and Federal Constitutions, when advancing an independent argument under the state constitution, an appellant must present a "precise [and] analytically sound approach." *Yoeuth v. State,* 2009 WY 61, ¶ 34, 206 P.3d 1278, 1286 (Wyo.2009). Because

Mr. Miller does not articulate any basis for interpreting the Wyoming Constitution more broadly than its federal counterpart, we will limit our review to a claimed violation of the United States Constitution. *Flood v. State,* 2007 WY 167, ¶ 13, 169 P.3d 538, 543 (Wyo.2007).

ler the night before and that he had recently been in Mr. Miller's residence. His admission that he had purchased drugs was a statement against his penal interests. *Bonsness v. State,* 672 P.2d 1291, 1293 (Wyo.1983). "Such admissions of crime 'carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.'" *Id.* (quoting *Harris,* 403 U.S. at 583, 91 S.Ct. at 2082). He described Mr. Miller's home in some detail. He mentioned that Mr. Miller stored the drugs in a gray duffle bag and a safe located in the residence. He provided the officers with the location of the safe. Additionally, Mr. Lowrey's statements were made in close temporal proximity to the events and observations he described. In short, Mr. Lowrey's statements to the officers were based upon firsthand knowledge, were against his penal interests, and were close in time to the events he described. We find no error in the district court's determination that Mr. Lowrey's statements were sufficiently reliable to provide officers with probable cause.

[¶ 15] We must next determine if there was sufficient evidence to support the district court's conclusion that exigent circumstances justified the decision to secure the residence before obtaining a warrant. Uniformed police officers in marked vehicles conducted the search at Mr. Lowrey's home. Officers were aware that Mr. Lowrey's home and Mr. Miller's residence were located only a block and a half away from each other. Officers testified that Mr. Miller called Mr. Lowrey twice, in rapid succession, while he was being questioned. Based on evidence provided by Mr. Lowrey, officers suspected Mr. Miller was in possession of controlled substances. The officers testified that they were concerned that, without detaining Mr. Miller and conducting a sweep of the home, the evidence in the home might be destroyed before they could obtain and execute a search warrant. The phone calls, the close proximity of the homes, and the obvious police presence, officers said, all added to their concern that Mr. Miller, or others inside his home, might try to destroy evidence.

[¶ 16] The nature of the evidence that officers sought to preserve also plays a

significant role in determining whether exigent circumstances existed. "Reported cases are legion where criminals have been caught attempting to flush narcotics away." *State v. Galvin,* 161 N.J.Super. 524, 391 A.2d 1275, 1284 (Ct. Law Div.1978). *See also Rideout,* ¶ 24, 122 P.3d at 208; *Hughes v. State,* 2003 WY 35, ¶ 13, 65 P.3d 378, 382 (Wyo.2003); *Patterson v. State,* 691 P.2d 253, 258 (Wyo. 1984). The officers testified that they were concerned that the controlled substances would be destroyed if the vehicle and residence were not secured. The district court found this concern was reasonable:

> Here, the evidence is, we were talking about marijuana and perhaps methamphetamine. And both types—those drugs are easily destroyed. They can be flushed. They can be worked through the garbage disposal. All of those things can happen, and so I don't have any trouble with—or I am not troubled by that fact. Given what the officers believe they were dealing with, the evidence was of a type that certainly was susceptible to being destroyed. I don't have any issue with that.

[¶ 17] The district court also found that the officers restricted their sweep of the residence to actions which would eliminate those exigent circumstances. As in *Rideout,* the officers did what was necessary to secure Mr. Miller's residence, but otherwise did not conduct a search until they had obtained a warrant. They walked through the residence to ensure that there was no one inside who might destroy evidence or threaten officer safety. The sweep took a total of two minutes. Officers then left the residence and waited outside for the search warrant.

[¶ 18] The district court properly recognized that the presence of evidence that is easily destroyed does not, by itself, create an exigency justifying a warrantless search. It did, however, conclude that the presence of drugs, along with all of the other circumstances known to the officers at the time, created exigent circumstances justifying the sweep of Mr. Miller's residence. We find no error in this conclusion.

[¶ 19] Next, we turn to Mr. Miller's assertion that his detention was imper-

missible under the Fourth Amendment. Because Mr. Miller did not raise this issue with the district court, we review for plain error. "To suppress evidence as the fruit of his unlawful detention or unlawful search, [a defendant] 'must make two showings: (1) that the detention [or search] did violate his Fourth Amendment rights; and (2) that there is a factual nexus between the illegality and the challenged evidence.'" *United States v. Jarvi*, 537 F.3d 1256, 1260 (10th Cir.2008) (quoting *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir.2001)). We need not address the first element because Mr. Miller has not satisfied his burden of proving that the challenged evidence bears the requisite causal connection to the detention.

[¶ 20] In the district court, Mr. Miller asserted that information obtained during the sweep "provided ... a basis for the search warrant that ... taints the search warrant and ... all information seized from the search." The district court rejected this argument, noting from the bench, "I didn't hear any testimony, not one bit of anything that the officers saw or seized ... when they did go through the residence."

[¶ 21] From our review, it appears that the search warrant affidavit was based solely on the information provided by Mr. Lowrey. Only one paragraph in the affidavit referenced the encounter with Mr. Miller. It states: "Based on the above information, Officers went to the Miller residence, made contact with Jason Miller, who appeared to be just getting into his vehicle to leave, and secured the residence and the vehicle, while Agents sought to obtain a Search Warrant." In his motion to suppress, Mr. Miller never alleged that law enforcement officers obtained any evidence as a result of his detention.

[¶ 22] It is undisputed that the challenged evidence was obtained during execution of the search warrant. On appeal, Mr. Miller does not identify any evidence or information that was found during the sweep or his detention that was used to obtain the warrant. He has failed to establish the required nexus between the alleged misconduct and the evidence that he seeks to suppress. We find no error in the district court's denial of his motion to suppress in docket no. 6171.

**Docket no. 6192**

[¶ 23] In docket no. 6192, Mr. Miller sought to suppress evidence found as a result of the search of his fiancée's vehicle. The district court denied the motion on the basis that Mr. Miller lacked standing to challenge the search. The district court also found that a warrant was not necessary to search the vehicle because the owner of the vehicle had consented to the search.[5] On appeal, Mr. Miller claims that the district court erred in denying his motion to suppress. We conclude that Mr. Miller lacked standing to challenge the search and find no error in the district court's denial of the motion.

[¶ 24] In order to challenge a search as unconstitutional, a defendant must first establish that "he had a reasonable expectation of privacy in the property searched." *Andrews v. State*, 2002 WY 28, ¶ 20, 40 P.3d 708, 712 (Wyo.2002). To meet this initial prerequisite, Mr. Miller must demonstrate that he had a subjective expectation of privacy and also a "'reasonable expectation of privacy that society is prepared to recognize.'" *Id.*, ¶ 20, 40 P.3d at 712–13 (quoting *Dean v. State*, 865 P.2d 601, 613 (Wyo.1993)). To determine whether a reasonable expectation of privacy exists, this Court examines four factors: (1) the precautions taken to maintain privacy as to the item; (2) the framers' intent when drafting the United States Constitution; (3) the property rights the defendant had in the searched item; and (4) the legitimacy of the defendant's possession of the property searched. *Andrews*, ¶ 20, 40 P.3d at 713. The burden of proving a reasonable expectation of privacy falls on the proponent of the motion to suppress. *Grissom v. State*, 2005 WY 132, ¶ 15, 121 P.3d 127, 133 (Wyo.2005).

5. The State also contended that a search warrant was not necessary because a drug dog had alerted to the vehicle providing probable cause for the search. The district court did not address that issue and, in light of the result we reach here, it is also unnecessary for us to address it.

[¶ 25] Generally, an individual will have a reasonable expectation of privacy in a vehicle if he has an ownership interest in the vehicle or is lawfully present in the car. 6 Wayne R. LaFave, *Search and Seizure* § 11.3(e), at 192 (4th ed.2004). Our jurisprudence supports this proposition. For example, in *Yoeuth*, ¶ 39, 206 P.3d at 1288, and *Parkhurst v. State*, 628 P.2d 1369, 1374 (Wyo.1981), the passengers in vehicles had standing to challenge the searches because they were lawfully present in the vehicle at the time of the search. On the other hand, in *Dettloff v. State*, 2007 WY 29, ¶ 16, 152 P.3d 376, 382 (Wyo.2007) and *Putnam v. State*, 995 P.2d 632, 636 (Wyo.2000), the defendants lacked standing to challenge the searches because they presented no evidence that they were lawfully present in the vehicle at the time of the search.

[¶ 26] We note initially that there is some dispute in the record regarding ownership of the vehicle. At the time of the search, the vehicle was parked in the driveway of the fiancée's parents. The keys to the vehicle had been left with the fiancée's mother. When contacted by police, mother told the investigating officer that title to the vehicle was held in her name. At the suppression hearing, mother testified that she had given the vehicle to her daughter. The ownership status of mother was relevant in determining whether mother could consent to the search. It is not relevant in analyzing whether Mr. Miller had a reasonable expectation of privacy in the vehicle. We will assume for purposes of our analysis that the fiancée had an ownership interest in the vehicle.

[¶ 27] It is undisputed that Mr. Miller did not own the vehicle and was not present in the vehicle either as the driver or as a passenger when the search was initiated. He was not present at any time during the search. Nevertheless, Mr. Miller contends that he had a "possessory interest" in the vehicle. He claims that this "possessory interest" arises because the vehicle was owned by his fiancée, he had used the vehicle in the past, and that his fiancée had given him permission to use the vehicle in the future. Mr. Miller asserts that by virtue of their relationship, he had a reasonable expectation of privacy in the vehicle at the time of the search.

[¶ 28] Mr. Miller cites two cases to support his position: *United States v. Soto*, 988 F.2d 1548 (10th Cir.1993) and *United States v. Rubio–Rivera*, 917 F.2d 1271 (10th Cir.1990). Both cases are easily distinguishable. In both *Soto* and *Rubio–Rivera*, neither defendant owned the vehicle. Nevertheless, both had standing to challenge the searches because each was in possession of the vehicle at the time of the search and had permission from the owner to use the vehicle. *Soto*, 988 F.2d at 1550, *Rubio–Rivera*, 917 F.2d at 1275. Here, Mr. Miller was not present and was not in possession of the vehicle at the time of the search. If a non-owner is not using the vehicle at the time of the search, he does not have a reasonable expectation of privacy. *See State v. Morrill*, 197 Conn. 507, 498 A.2d 76, 96 (1985) (non-owner, who often used the searched car, lacked standing because he was not using the car at the time of search); *see also Tompkins v. State*, 705 P.2d 836, 843 (Wyo.1985) (finding no possessory interest when person was neither in possession of nor present in a home, which he did not own, at time of search). The mere fact that Mr. Miller's fiancée owned the vehicle is not by itself sufficient to provide Mr. Miller with the requisite expectation of privacy. *See Neal v. Acevedo*, 114 F.3d 803, 807 (8th Cir.1997) ("Neal lacked standing to challenge the search of his fiancée's car."); *Cooks v. State*, 699 P.2d 653, 658 (Okla.Crim.App.1985) (Appellant lacked standing to object to a search of the car owned by his common-law wife, as he had neither a possessory nor a property interest in the vehicle.); *Anderson v. State*, 992 P.2d 409, 417 (Okla.Crim.App.1999) ("We are not persuaded by Appellant's argument that he had [privacy] interests merely because his wife purportedly owned the car."). Additionally, permissive use of the vehicle on some prior occasion does not confer on the user either a property or possessory interest in the vehicle: "A person does not have a reasonable expectation of privacy ... with regard to a car he has permission to use but is not using at the time of the search." *United States v. Smith*, 340 F.Supp. 1023, 1030 (D.Conn.1972); *see also Morrill*, 498 A.2d at

96 (rejecting defendant's claim that his prior use of his mother's car, together with his continuing permission to use the car, gave him a protected expectation of privacy in the car).

[¶ 29] We affirm the district court's finding that Mr. Miller did not have a reasonable expectation of privacy in the vehicle. Accordingly, he lacks standing to challenge the search. Because we find Mr. Miller does not have standing to challenge the search of the vehicle, we need not determine whether the officer had consent to search the vehicle or whether the alert of the drug dog provided the officers with probable cause to search the vehicle.

## B. Speedy Trial

### Standard of Review

[¶ 30] Mr. Miller asserts a violation of his right to speedy trials in both cases.

> We review a speedy trial claim to ensure the mandates of W.R.Cr.P. 48(b) and constitutional guarantees have been met. *Yung v. State,* 906 P.2d 1028, 1032 (Wyo. 1995). We examine de novo the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution. We review the district court's factual findings for clear error. *Sisneros v. State,* 2005 WY 139, ¶ 16, 121 P.3d 790, 796–97 (Wyo.2005); *[State v.] Humphrey,* [2005 WY 131,] ¶ 8, 120 P.3d [1027,] 1029 [ (Wyo.2005) ].

*Humphrey v. State,* 2008 WY 67, ¶ 18, 185 P.3d 1236, 1243 (Wyo.2008).

### Docket No. 6192

[¶ 31] Mr. Miller entered a plea of *nolo contendere* in docket no. 6192. A plea of *nolo contendere* has the same effect as a plea of guilty, including waiver of non-jurisdictional defenses. *Meyers v. State,* 2005 WY 163, ¶ 14, 124 P.3d 710, 715 (Wyo.2005); *Ochoa v. State,* 848 P.2d 1359, 1361–62 (Wyo. 1993). A claim of violation of the right to a speedy trial is a non-jurisdictional defense. *Cohee v. State,* 2005 WY 50, ¶ 13, 110 P.3d

267, 272 (Wyo.2005); *Davila v. State,* 831 P.2d 204, 206 (Wyo.1992).

[¶ 32] This plea of *nolo contendere* was made pursuant to W.R.Cr.P. 11(a)(2) which allows a defendant to plead guilty while reserving the right to seek review on appeal of any specified pretrial motion. *Morgan v. State,* 2004 WY 95, ¶ 23, 95 P.3d 802, 808 (Wyo.2004). We have said, however, that "a conditional plea of guilty does not provide *carte blanche* permission for the appellant to present any and all arguments on appeal." *Id.,* ¶ 24, 95 P.3d at 808; *see also Bailey v. State,* 12 P.3d 173, 177 (Wyo.2000). An appellant may only raise arguments clearly presented before the district court. *Morgan,* ¶ 24, 95 P.3d at 808–09. In this case, Mr. Miller entered a conditional plea in docket no. 6192 reserving only the right to appeal from the adverse resolution of the motion to suppress evidence found in his fiancée's vehicle. He did not assert a speedy trial defense in the district court and did not reserve his right to assert that issue on appeal. Mr. Miller has waived his right to appeal this issue in docket no. 6192.

### Docket No. 6171

[¶ 33] Mr. Miller proceeded to trial and was convicted by a jury in docket no. 6171. The record reflects he signed two waivers of the right to a speedy trial in this case—the first in April 2007 and the second in October 2007. The April document, entitled "Waiver of Speedy Trial," is signed by both Mr. Miller and his counsel. It stated, in full:

> The Defendant, having first been fully advised of his constitutional right to a speedy trial, hereby knowingly, intelligently and voluntarily waives his right to a speedy trial in the above-captioned matter.

[¶ 34] Mr. Miller, and his new counsel, signed a second "Verified Waiver of Speedy Trial" in October 2007. This document stated:

> I, JASON MILLER, Defendant in the above entitled matter Waive my right to a Speedy Trial in this matter as follows:
> 1. I understand that I have been charged with the crime(s) of Possession of a Controlled Substance with Intent to Deliver–

Marijuana, W.S. 35–7–1031(a)(ii), Possession of a Controlled Substance–Methamphetamine, W.S. 35–7–1031(c)(i)(C) and Possession of a Controlled Substance–Psilocybin, W.S. 35–7–1031(c)(i)(A).

2. I have been advised that I have a right to a jury trial within 180 days of the date of my arraignment, and that I can demand that my trial take place within that 180 day time limit.

3. After consultation with my attorney, I agree to waive my right to have a jury trial within 180 days of arraignment as provided by Rule 48(b), Wyoming Rules of Criminal Procedure.

[¶ 35] Mr. Miller does not challenge the validity of the waivers.[6] Instead, he contends that, in general, the right to a speedy trial may not be waived prospectively. He supports this assertion with the decision of the Court of Appeals for the Tenth Circuit in *United States v. Williams*, 511 F.3d 1044 (10th Cir.2007). In *Williams*, the Tenth Circuit held that a defendant's prospective waiver of speedy trial was invalid. 511 F.3d at 1054–55. In doing so, it relied upon the United States Supreme Court's holding in *Zedner v. United States*, 547 U.S. 489, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006), that a defendant may not prospectively waive the application of the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*

[¶ 36] Although Mr. Miller presents no Wyoming case law or statute indicating that a defendant may not execute a prospective waiver, his assertion that a speedy trial cannot be waived indefinitely does have some merit. *See, e.g., State v. Rose*, 348 Mont. 291, 202 P.3d 749 (2009). A signed waiver of a speedy trial does not give the State free reign to delay a defendant's trial unreasonably for all time. The cases Mr. Miller relies upon, however, are distinguishable. First, *Williams* and *Zedner* both interpret the Speedy Trial Act, a law of federal criminal procedure that does not apply to

proceedings in Wyoming state courts. Second, the defendants in *Williams* and *Zedner* suffered delays after waiving their rights to a speedy trial that far exceeded the allowable delay under the applicable rule.[7] Zedner went to trial more than six years after waiving his right to a speedy trial and Williams waited 252 days. Mr. Miller did not suffer comparable delays under W.R.Cr.P. 48(b).

[¶ 37] Other than quoting the language of the rule and claiming that the right to a speedy trial cannot be waived prospectively, Mr. Miller does not claim a violation of W.R.Cr.P. 48(b). Significantly, he does not contend that his trial was delayed more than 180 days after each waiver or that the delay violated W.R.Cr.P. 48(b) in some other manner. Accordingly, we will not consider the matter further. We do note that when all properly excluded time is accounted for, including defense counsel's request for a mental examination and motions for continuances to allow new defense counsel adequate preparation time, Mr. Miller's trial was held well within the 180–day mandate of W.R.Cr.P. 48(b).

[¶ 38] We move next to Mr. Miller's contention that his constitutional right to a speedy trial was violated. In determining whether a constitutional violation of the right to a speedy trial has occurred, we are guided by the four-factor test set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). That test requires us to evaluate the following factors: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of the right; and (4) prejudice to the defendant. *Harvey v. State*, 774 P.2d 87, 92 (Wyo.1989) (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). These factors are considered together and balanced in relation to all relevant circumstances. *Berry v. State*, 2004 WY 81, ¶ 31, 93 P.3d 222, 231 (Wyo.2004). The burden of proving prejudicial delay from a speedy trial

---

6. At the district court level, Mr. Miller asserted that he signed the first waiver because he was "threatened" by his then current counsel. The district court addressed this claim in open court and found Mr. Miller signed the waiver voluntarily. Mr. Miller does not challenge the district court's resolution of this issue.

7. The Speedy Trial Act requires a defendant be brought to trial within 70 days of the filing of an indictment, or from the date of the defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1).

violation lies with the defendant. *Rodiack v. State,* 2002 WY 137, ¶ 11, 55 P.3d 1, 3 (Wyo. 2002).

## Length of Delay

[¶ 39] The first factor, length of delay, is a threshold requirement. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. Only if the length of delay is "presumptively prejudicial" will an examination of the remaining three factors be necessary. *Id.* The constitutional right to a speedy trial attaches at the filing of a criminal complaint or the arrest of the defendant, whichever occurs first. *Humphrey,* ¶ 21, 185 P.3d at 1244; *Strandlien v. State,* 2007 WY 66, ¶ 8, 156 P.3d 986, 990 (Wyo.2007); *Jennings v. State,* 4 P.3d 915, 921 (Wyo.2000). Mr. Miller was arrested on charges in docket no. 6171, on October 24, 2006, and was brought to trial on March 11, 2008, a delay of 504 days. We have previously found that a 500–day delay is presumptively prejudicial. *Campbell v. State,* 999 P.2d 649, 655–56 (Wyo.2000). We therefore move forward and examine the remaining factors of the *Barker* test.

## Reason for Delay

[¶ 40] In reviewing the reason for delay, we examine which party was responsible for the delay. We have previously noted:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Wehr v. State,* 841 P.2d 104, 112–13 (Wyo. 1992) (quoting *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192). We have also stated "[u]nquestionably, delays attributable to the defendant may disentitle him to speedy trial safeguards." *Berry,* ¶ 35, 93 P.3d at 232. Delays attributable to changes in defense counsel, to the defendant's requests for continuances, and to the defendant's pretrial motions are all considered delays attributable to the defense. *Strandlien,* ¶ 12, 156 P.3d at 991.

[¶ 41] A review of the record shows most of the delay was attributable to Mr. Miller's six changes in defense counsel and the requests by the defense to allow adequate time for new counsel to prepare for trial. Delays due to changes in defense counsel weigh against the defendant in a speedy trial analysis. *Berry,* ¶ 35, 93 P.3d at 232. Adding to the delay, the district court, at the request of defense counsel, ordered Mr. Miller to undergo a competency examination. The examination caused an additional delay of 50 days. Delays attributable to competency evaluations fall into the "neutral" category in the *Barker* balancing test. *Potter v. State,* 2007 WY 83, ¶¶ 30, 37, 158 P.3d 656, 664–65 (Wyo.2007). Mr. Miller identifies no delays attributable to the State or the district court. This factor weighs substantially in the State's favor.

## Defendant's Assertion of the Right

[¶ 42] Mr. Miller signed two waivers of his right to a speedy trial. He did not otherwise bring any speedy trial claims to the attention of the district court. This factor weighs substantially in favor of the State.

## Prejudice to the Defendant

[¶ 43] The last *Barker* factor, prejudice to the defendant, is evaluated in light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

[¶ 44] Mr. Miller makes no argument that his pretrial incarceration was oppressive and we will not consider it further. When examining the anxiety and concern of the accused, this Court has said "because a certain amount of pretrial anxiety naturally exists, a defendant must demonstrate he 'suffered prejudice in an extraordinary or unusual manner.'" *Strandlien,* ¶ 16, 156 P.3d at 992.

A "bare assertion" of anxiety will not suffice. *Id.* Mr. Miller makes no assertion of anxiety at all.

[¶ 45] The last factor, the possibility that the defense was impaired by the delay, is the most serious factor in determining prejudice because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Mr. Miller asserts his defense was impaired because the delay allowed the State to locate Mr. Miller's former roommate who then testified against him at trial. This argument mischaracterizes the purpose of this factor. This inquiry is designed to prevent a defense from becoming impaired by death, disappearance, or memory loss of witnesses for the defense, not to prevent the prosecution from developing its case. 5 Wayne R. LaFave, *Criminal Procedure* § 18.2(e), at 131 n. 81 (3d ed.2007). Mr. Miller has failed to demonstrate that he was prejudiced by the delay. This last factor also weighs in favor of the State.

[¶ 46] In balancing the four factors, we must conclude that Mr. Miller's constitutional right to a speedy trial in docket no. 6171 was not violated. The delay in trial was primarily attributable to Mr. Miller's numerous changes of counsel. Mr. Miller waived his right to a speedy trial on two occasions, and he has shown no prejudice to his defense as a result of the delay.

### CONCLUSION

[¶ 47] The district court did not err in denying the motions to suppress in docket no. 6171 and docket no. 6192, and Mr. Miller was not denied his statutory or constitutional right to a speedy trial in either case.

[¶ 48] Affirmed.