# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 30

OCTOBER TERM, A.D. 2012

*March 13, 2013*

CONNOR TIMOTHY CORRIGAN
PHIPPEN,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-12-0157

*Appeal from the District Court of Johnson County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
> Christopher M. Wages of Goddard, Wages & Vogel, Buffalo, WY.

*Representing Appellee:*
> Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Paul S. Rehurek, Senior Assistant Attorney General, and Christyne Marie Martens, Assistant Attorney General.  Argument by Ms. Martens.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]     After conditionally pleading guilty to possession with intent to deliver marijuana, Connor Timothy Corrigan Phippen challenges the district court's denial of his motion to suppress evidence discovered during a search of his vehicle.  He contends that the drug dog sniff was inconclusive and that the subsequent search of his vehicle was illegal.  We affirm, based upon our conclusion that the totality of the circumstances was sufficient to find probable cause.

## ISSUE

[¶2]     Phippen presents one issue:

> Whether or not the warrantless search of Mr. Phippen's vehicle violated Article I, Section 4 of the Wyoming Constitution because it was unreasonable under the circumstances and was not supported by probable cause.

## FACTS

[¶3]     In March of 2011, a staff member from the Hampton Inn in Buffalo, Wyoming, reported to the Buffalo Police Department the smell of marijuana emanating from a hotel room.  Three officers responded to the report.  One of them, Sergeant Dan Fraley, spoke with hotel staff that identified a man checking out at the front desk and a woman seated in the lobby as the alleged pot smokers.  Sergeant Fraley approached the man, identified himself, and informed the man of the allegation.  Connor Phippen and Dana Rose both admitted  that  the allegation was true, and Rose added that Phippen gave her the marijuana and that Phippen brought the drug into their hotel room where they both smoked the marijuana.

[¶4]     Phippen and Rose told officers they had driven from Denver to Buffalo in a pickup truck, which was parked outside the Hampton Inn.  When Sergeant Fraley asked for permission to search the truck, Phippen told him a dog could walk around the truck.  Sergeant Fraley radioed his colleague, Lieutenant Andy Tkach, a canine officer who was already in the parking lot with his dog Buddy.  Lieutenant Tkach had gone to the Hampton Inn after hearing on his radio that Sergeant Fraley was dispatched there for a complaint involving marijuana.  He parked in the parking lot and after learning that the suspects' truck had Minnesota license plates, he identified the only pickup with Minnesota plates and had Buddy walk around the vehicle.  Buddy alerted that marijuana was inside the vehicle.  However, he did not give his final "sit" which tells his handler that he has pinpointed the source of the odor.  His alert, however, told Lieutenant Tkach that the odor of illegal drugs was coming from the pickup.

1

[¶5]    After Buddy had alerted, Lieutenant Tkach asked Phippen for permission to search the truck, and Phippen responded the same way he had to Sergeant Fraley – that the dog could walk around the vehicle. Although Phippen did not know Buddy had already alerted to the vehicle, Phippen also told Lieutenant Tkach that he could search the vehicle if the dog hit on it. At that point, the officers placed Phippen under arrest. On his person at the time of arrest, Phippen was carrying candy and juice both containing THC, as well as over $4,000.00 in cash, most of which was comprised of $100 dollar bills and $50 dollar bills.

[¶6]    After the arrest, Sergeant Fraley began an inventory of the vehicle, during which a grocery bag was found containing items Sergeant Fraley suspected to be illegal drugs. Upon that discovery, Sergeant Fraley stopped the inventory and instructed another officer to apply for a search warrant, which was acquired. Indeed, as suspected the grocery bag contained marijuana. Officers also found a duffle bag with approximately six pounds of marijuana.

[¶7]    The Johnson County prosecutor charged Phippen with two felonies: possession with intent to deliver marijuana, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) and conspiracy to deliver marijuana, in violation of Wyo. Stat. Ann. §§ 35-7-1031(a)(ii) and 35-7-1042. The second charge was dismissed at the preliminary hearing, but arraignment proceeded on the first charge, to which Phippen pled not guilty.

[¶8]    As to the first charge, Phippen filed a motion to suppress, alleging the search of his vehicle was unlawful under both the federal and state constitutions. A hearing was held on September 12, 2011. Although Phippen tried to additionally challenge the legality of his arrest, the State objected and the district court limited the hearing to the legality of the search of Phippen's truck. The district court sustained the search, reasoning that the automobile exception justified the search of Phippen's pickup. Applying a totality of the circumstances analysis, which included the report of marijuana usage, that Phippen and Rose both admitted to smoking marijuana, that the truck belonged to Phippen, and that the drug dog alerted, the court concluded that there was probable cause to search the truck and denied Phippen's motion. The court made no further ruling and did not consider incriminating items and contraband on Phippen's person when arrested, as they were outside the scope of the hearing.

[¶9]    Phippen filed a second motion to suppress specifically challenging the legality of his arrest. However, a plea agreement was reached subsequent to the motion but before a hearing. In the agreement, Phippen agreed to enter a guilty plea conditioned upon his right to appeal the district court's *first* suppression ruling from September 12, 2011. In exchange, the State agreed to recommend a sentence of three to five years, suspended in favor of a split sentence of 45 days in jail followed by three years of probation. The plea agreement filed on October 7, 2011, did not specifically set forth a dispositive issue for appeal, and Phippen's second suppression motion remained unaddressed by the court.

[¶10] After a status conference prompted a setting for the second suppression motion, a hearing was held January 17, 2012. The parties relied on transcripts from the first hearing and no additional evidence was offered. The district court determined that Phippen's arrest was unlawful. After resolving the issue of the arrest, defense counsel then stated, "… as far as the conditional plea, I think that now we are in a position if the dog search fails, the whole thing is suppressed and its dispositive. If the dog search is upheld, then we lose." The court clarified that the totality of the circumstances, in addition to the dog's alert, needed to be considered. The court then accepted Phippen's conditional plea, accepted the plea agreement, and sentenced Phippen according to the plea agreement. The court's order stated that the specific issue preserved for appeal was "whether or not the search of [Phippin's] truck was lawful based on the totality of the circumstances prior to [Phippin's] arrest." This appeal followed.

## STANDARD OF REVIEW

[¶11] When reviewing a trial court's ruling on a motion to suppress,

> [W]e do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo*.

*Wallace v. State,* 2009 WY 144, ¶ 8, 221 P.3d 967, 969 (Wyo. 2009).

## DISCUSSION

[¶12] Phippen states his issue on appeal as whether or not the warrantless search of his vehicle violated the Wyoming Constitution because it was unreasonable under the circumstances and was not supported by probable cause. However, we view this appeal somewhat differently, for two reasons. First, the specific issue preserved in the district court's order after Phippen's conditional plea following the suppression hearing is "whether or not the search of [Phippen's] truck was lawful based on the totality of circumstances prior to [Phippen's] arrest." "A conditional plea of guilty does not provide *carte blanche* permission for [Phippen] to present any and all arguments on appeal." *Miller v. State,* 2009 WY 125, ¶ 32, 217 P.3d 793, 803 (Wyo. 2009). Only the arguments clearly presented before the district court may be raised on appeal. *Id.* Second, as pointed out by the State and according to our review of the record, Phippen did not adequately raise the Wyoming Constitutional issue separately when presenting his motion

to suppress to the district court. Furthermore, he failed to present cogent legal analysis to this Court regarding the same. An appellant does not preserve a Wyoming constitutional argument for appeal by merely citing to the Wyoming Constitution in his motion to suppress without independent supporting analysis of why or how that constitution provides different or more extensive protections. *Flood v. State,* 2007 WY 167, ¶ 12, 169 P.3d 538, 543 (Wyo. 2007). Although Phippen devotes a portion of his brief to the matter of "Article I, Section 4 provides greater protection than the Federal Constitution," he neglects to articulate exactly *how* the Wyoming Constitution provides greater protection.

[¶13] With the foregoing in mind, we proceed to analyze this case under the Fourth Amendment of the United States Constitution. Under the Fourth Amendment, warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement. *Tucker v. State,* 2009 WY 107, ¶ 22, 214 P.3d 236, 243 (Wyo. 2009). Like most jurisdictions, Wyoming has recognized several exceptions to the warrant requirement, including the automobile exception. *McKenney v. State,* 2007 WY 129, ¶ 12, 165 P.3d 96, 99 (Wyo. 2007). That exception states that an automobile may be searched without a warrant when there is probable cause to believe it contains contraband or evidence of a crime. *Id.* Probable cause to search an automobile "is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence of a crime." *Id.* at ¶ 8, 165 P.3d 98. Those circumstances supporting a finding of probable cause need not provide proof of guilt or even prima facie evidence of guilt. *Tucker v. State,* 2009 WY 107, ¶ 22, 214 P.3d 236, 243 (Wyo. 2009). The totality of circumstances that qualify for analysis in a particular case are those circumstances collectively known to law enforcement cooperating in the particular criminal investigation. *Rohda v. State,* 2006 WY 120, ¶ 19, 142 P.3d 1155, 1165-66 (Wyo. 2006).

[¶14] A very recent United States Supreme Court decision, *Florida v. Harris,* 568 U.S. ____, (2013), expounds upon the benefits of a totality of the circumstances approach within the context of probable cause, and states:

> The test for probable cause is not reducible to "precise definition or quantification." *Maryland v. Pringle,* 540 U. S. 366, 371 (2003). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." *Gates,* 462 U. S., at 235. All we have required is the kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act." *Id.,* at 238, 231 (internal quotation marks omitted).

In evaluating whether the State has met this practical and common-sensical standard, we have consistently looked to the totality of the circumstances. See, *e.g.*, *Pringle*, 540 U. S., at 371; *Gates*, 462 U.S., at 232; *Brinegar v. United States*, 338 U.S. 160, 176 (1949). We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach. In *Gates*, for example, we abandoned our old test for assessing the reliability of informants' tips because it had devolved into a "complex superstructure of evidentiary and analytical rules," any one of which, if not complied with, would derail a finding of probable cause. 462 U.S., at 235. We lamented the development of a list of "inflexible, independent requirements applicable in every case." *Id.* at 230, n.6. Probable cause, we emphasized, is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Id.*, at 232.

[¶15] In keeping with *Harris*, and in applying our oft-repeated standard, this Court has held that the odor of contraband, standing alone, can supply probable cause. *McKenney*, ¶¶ 9-10, 165 P.3d 98. Furthermore, a dog sniff is not a search within the meaning of the Fourth Amendment, and an alert by a reliable drug dog specifically trained to detect the odor of contraband constitutes probable cause to search an automobile without a warrant. In this case, however, the district court considered other facts to make its determination based upon the totality of the circumstances, an approach we find to be sound and based upon the sum of this case's parts.

[¶16] Here, Buddy, a trained and reliable drug dog, alerted to Phippen's truck that was parked in the Hampton Inn's parking lot. Testimony elicited at the suppression hearing showed that Buddy alerted through several behaviors that indicated he detected the odor of illegal substances. Buddy changed his breathing, he changed his "gear set" and body posture, and he altered the speed of his search, and bracketed the odor by going back and forth between the tail gate of the pickup to the front door seam. Buddy was trained to alert to drug odor through these behaviors, and to pinpoint the source of the odor by sitting down, explained Officer Tkach. However, although Officer Tkach concluded that Buddy officially alerted, the officer noted that Buddy never gave his final sit indication. Even so, the officer in charge of Buddy believed, as a result of the alert by Buddy, that he had probable cause to search the truck. Furthermore, the officer in charge of Buddy had been a canine officer for eighteen of his total thirty-five years as a police officer. The district court was faced with conflicting testimony from Officer Fraley who, by comparison, had no training regarding drug dogs. In the end, the court made a specific finding that Buddy alerted to Phippen's truck, thereby resolving the conflicting

testimony. Despite the absence of a specific finding as to Buddy's training and reliability as a drug dog, our review of the record indicates more than enough testimony showing Buddy's abilities as a certified drug dog. Lieutenant Tkach testified that he and Buddy worked together for over 11 years, including over 600 hours of post-certification training and hundreds more hours of informal training. Buddy was certified by the National Police Canine Association to detect marijuana specifically. Although Buddy had made false alerts, it happened a total of less than five percent of the time.

[¶17] Buddy's training as a drug dog is notable and extensive. However, Buddy's alert may or may not have been enough to provide probable cause for the search of Phippen's truck. We need not make that determination because, although the district court concluded that Buddy made an "alert of some sort," the search of the pickup was affirmed because of the totality of the circumstances. Additional facts beyond the dog search were used by the district court to determine that probable cause existed. These facts included that the Hampton Inn staff reported the smell of marijuana in Phippen's room, and that both Phippen and Rose admitted to using marijuana in their room. Also, Rose openly told law enforcement that Phippen supplied her with the marijuana and that he brought it to their hotel room. From the totality of these circumstances, we conclude that an officer of reasonable prudence would have been warranted in the belief that controlled substances would be found in Phippen's vehicle.

## CONCLUSION

[¶18] Having concluded that the search of Phippen's truck was lawful based upon the totality of circumstances prior to his arrest, we affirm the district court's denial of the Motion to Suppress.