# IN THE SUPREME COURT, STATE OF WYOMING

# 2014 WY 60

APRIL TERM, A.D. 2014

May 8, 2014

GILBERT ORTIZ, JR.,

Appellant
(Defendant),

v.

S-13-0127

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Peter G. Arnold, Judge*

*Representing Appellant:*
    Dion J. Custis, Dion J. Custis, PC, Cheyenne, Wyoming.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Jeffrey S. Pope, Assistant Attorney General; Jennifer E. Zissou, Assistant Attorney General. Argument by Ms. Zissou.

*Before KITE, C.J., and HILL, BURKE, and FOX, JJ., and DONNELL, D.J.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX**, **Justice**.

[¶1]   A jury found Gilbert Ortiz, Jr., guilty of three counts of second-degree sexual assault.  Mr. Ortiz raises seven issues on appeal.  We affirm on all issues.

## ISSUES

[¶2]   1.   Was Mr. Ortiz denied his right to a speedy trial?

2.   Did the district court properly admit forensic interview evidence as a prior consistent statement?

3.   Did testimony from a forensic interviewer or a detective improperly vouch for the credibility of the victim?

4.   Was the Bill of Particulars sufficient for Mr. Ortiz to adequately prepare a defense?

5.   Did the circuit court abuse its discretion when it granted an *ex parte* motion quashing Mr. Ortiz's subpoena to call the victim and her mother as witnesses at a preliminary hearing?

6.   Did the district court abuse its discretion when it denied admission of sexualized behavior evidence on relevancy and hearsay grounds?

7.   Did the State commit prosecutorial misconduct when it referenced a non-religious quote from a church sign in its opening statement?

## FACTS

[¶3]   While the procedural facts here are extensive, they are nevertheless essential to our legal analysis.

[¶4]   In November 2006, eleven-year-old M.O. reported to her mother that her grandfather, Gilbert Ortiz, Jr., had molested her when she was five or six years old, between 2000 and 2002.  The State conducted an investigation that eventually yielded charges.

[¶5]   A warrant of arrest was served on Mr. Ortiz on April 27, 2010, and he was released on bond the following day.  On April 28, 2010, Mr. Ortiz filed a motion waiving his right to a speedy preliminary hearing.  An information was filed on May 26, 2010, charging Mr. Ortiz with three counts of first-degree sexual abuse of a minor, in violation of Wyo. Stat. Ann. § 6-2-314 (LexisNexis 2007).  Mr. Ortiz entered a plea of not guilty to

1

all three charges at his arraignment on June 10, 2010. The district court then set the trial for August 3, 2010. On July 8, 2010, at Mr. Ortiz's request, the district court reset the trial to October 4, 2010. The district court again, at the request of Mr. Ortiz, reset the trial on September 2, 2010. The new trial was set for November 1, 2010.

[¶6] On October 13, 2010, Mr. Ortiz waived his right to a speedy trial. Additionally, because of a conflict with another trial, on October 15, 2010, Mr. Ortiz filed a motion to vacate the November 1, 2010 trial date. The district court granted Mr. Ortiz's motion on October 18, 2010, and set a hearing on outstanding motions for January 3, 2011.

[¶7] The trial was once again reset on December 8, 2010, to February 7, 2011. On January 7, 2011, Mr. Ortiz filed a motion to dismiss, arguing that his right to due process of law was violated because the trial transcript from his son's divorce case was missing from court records. On January 12, 2011, Mr. Ortiz filed a motion to produce and a motion *in limine.* In his motion *in limine*, Mr. Ortiz requested that the district court preclude expert witness Lynn Huylar from providing any testimony substantiating the credibility of the victim. Additionally, Mr. Ortiz demanded that the district court compel production of certain sexual assault information to the defense. On January 18, 2011, the trial was again reset to April 4, 2011, at the request of Mr. Ortiz. On February 17, 2011, Mr. Ortiz filed a motion to dismiss for lack of speedy trial. In his motion, Mr. Ortiz argued that an unconstitutional delay occurred as a result of the time between the original report of the incident and the filing of the felony information. Eleven days later, on February 28, 2011, Mr. Ortiz filed another waiver of speedy trial. On March 1, 2011, the trial was once again reset, to June 6, 2011.

[¶8] On May 12, 2011, the State filed a motion to vacate trial setting and reset the trial to give the State and the defense more time for plea negotiations. The district court granted the State's motion on May 12, 2011, pursuant to W.R.Cr.P. 48(b)(4), and reset the trial to July 5, 2011. Prior to the July trial setting, on June 3, 2011, Mr. Ortiz filed a motion to have the district court reexamine its earlier order denying Mr. Ortiz's request that the district court perform an *in camera* review of DFS records to determine whether relevant and exculpatory evidence should be provided to the defense. The trial was reset to September 6, 2011, at a motions hearing on June 17, 2011.

[¶9] The district court issued an order on all pending motions on July 8, 2011. The order denied Mr. Ortiz's motion to dismiss for due process violation; granted Mr. Ortiz's motion to limit the expert testimony of Ms. Huylar; denied Mr. Ortiz's request for production of evidence from Ms. Huylar; granted Mr. Ortiz's motion to have the district court reexamine DFS records; reserved Mr. Ortiz's evidentiary motions until after production of evidence at trial; and granted the State's motion to quash all outstanding subpoenas (and ordered that any future subpoenas comply with the Wyoming Rules of Criminal Procedure and be delivered to the district court for *in camera* review).

2

[¶10]  At a July 14, 2011 status hearing, the district court expressed concern that the trial had been subject to so many delays, to which Mr. Ortiz's counsel replied, "[m]y client doesn't care.  Whatever, Your Honor."  At the hearing the trial was reset to September 26, 2011, pursuant to W.R.Cr.P. 48(b)(4).

[¶11]  On August 25, 2011, Mr. Ortiz filed a motion requesting a hearing on whether the victim's testimony had been tainted.  In response, the district court issued an order vacating and resetting the trial to January 2, 2012.  The order also set the hearing on Mr. Ortiz's taint motion for September 9, 2011.  On September 8, 2011, Mr. Ortiz filed a motion to bifurcate the September 9 hearing.  Following this, on September 14, 2011, Mr. Ortiz retained new counsel.

[¶12]  On September 22, 2011, the district court issued an order denying Mr. Ortiz's taint hearing request.  In its denial, the district court stated, "[a] competency hearing is not a dress rehearsal for cross-examination at trial."

[¶13]  After retaining new counsel, Mr. Ortiz filed a motion, on October 3, 2011, to set a status hearing.  On October 6, 2011, the district court issued an order setting the status hearing for November 2, 2011.  On October 24, 2011, Mr. Ortiz filed a motion to continue the status hearing.  The district court granted the motion that same day and reset the status hearing to October 25, 2011.  On October 26, 2011, the district court issued an order requiring any remaining motions be filed by November 21, 2011.

[¶14]  On November 14, 2011, the trial was reset to January 3, 2012.  Mr. Ortiz filed a Motion for Additional Bill of Particulars as to All Counts of the Information on December 9, 2011.

[¶15]  Throughout the initial action, Mr. Ortiz continued to issue subpoenas that did not comply with W.R.Cr.P. 17(d).  On December 9, 2011, the State again filed a motion to quash all outstanding subpoenas, and a motion for defense counsel to abide by the Wyoming Rules of Criminal Procedure and prior orders of the district court.  The district court granted the motion on December 15, 2011.

[¶16]  On December 14, 2011, the State responded to Mr. Ortiz's motion for additional bill of particulars, stating that under Wyoming law, the bill does not require the time and place of the crime where those are not elements of the crime.

[¶17]  On January 3, 2012, the day trial was to have begun, the State filed a motion for dismissal because it had mistakenly charged Mr. Ortiz under a statute that had not been enacted at the time of the alleged crimes.

[¶18]  On January 4, 2012, the district court denied Mr. Ortiz's motions for additional bill of particulars and oral motion for a competency hearing for the alleged victim.  The

next day, the district court dismissed the charges without prejudice, in accordance with the State's motion.

[¶19] Five days later, on January 10, 2012, the State re-filed the charges under the statute in effect at the time of the crimes, Wyo. Stat. Ann. § 6-2-303(a)(v) (LexisNexis 2007).[1] On January 18, 2012, Mr. Ortiz filed a motion to dismiss for lack of a speedy trial.

[¶20] Mr. Ortiz attempted to subpoena the victim, M.O., and her mother, to appear at the January 26, 2012, preliminary hearing in the circuit court for Laramie County. The circuit court quashed the subpoenas pursuant to an *ex parte* motion to quash filed by the State. When provided the opportunity to present an offer of proof as to why M.O. and her mother's testimony would be relevant to determining probable cause, Mr. Ortiz argued that the circuit court should evaluate the testimony of M.O. and her mother with regard to competency and credibility. The circuit court ruled that a preliminary hearing was not the appropriate venue to engage in discovery, especially to assess competency and credibility, and confirmed the order quashing the subpoenas.

[¶21] On January 30, 2012, the State filed an Affidavit of Probable Cause, an Amended Information, and a Bill of Particulars. The Bill of Particulars identified each count of second-degree sexual assault, the time period during which the alleged acts occurred, and that Mr. Ortiz "inflicted sexual intrusion on the victim via digital penetration." Furthermore, the Bill of Particulars described what the victim was wearing at the time of each of the alleged acts. The Information and Affidavit of Probable Cause contained additional details regarding the investigation and charges.

[¶22] On February 8, 2012, Mr. Ortiz filed a petition for writ of review to the district court requesting a reversal of the circuit court's decision to quash the subpoenas. He also filed another motion to dismiss for lack of speedy trial on February 9, 2012. On February 28, 2012, Mr. Ortiz filed a motion to continue the arraignment and to continue the hearing on his January 18 motion to dismiss for lack of speedy trial.

[¶23] On February 29, 2012, the State filed a motion for immediate trial setting, motion deadlines, and motions hearing. In its motion, the State recounted the history of the proceeding (including the dismissed action), noting "[a]ll continuances except the State's May 12, 2011 Motion to Vacate and Reset were at the behest of defense counsel and the May 12, 2011 Motion was jointly approved by both parties."

[¶24] On March 2, 2012, Mr. Ortiz entered a peremptory disqualification of Judge Campbell and the case was assigned to Judge Arnold. On March 8, 2012, Judge Arnold

---

[1] Sexual assault in the second degree. This statute was repealed in 2007, but was in effect at the time of the crime. *See* W.R.Cr.P. 3(c).

4

reset arraignment and the hearing on the motions to dismiss for lack of speedy trial to March 20, 2012. On March 14, 2012, the district court denied Mr. Ortiz's petition for writ of review of the circuit court's preliminary hearing quashing the subpoenas for M.O. and her mother. The district court reiterated the reasoning of the circuit court that "parties may not subpoena witnesses for the purpose of discovery at a preliminary hearing."

[¶25] Mr. Ortiz's motions to dismiss for lack of speedy trial were subsequently denied at the hearing on March 20, 2012.

[¶26] Mr. Ortiz filed a motion to continue arraignment on March 26, 2012. Although the State objected, the district court reset arraignment to April 12, 2012. On April 9, 2012, the district court issued its order denying Mr. Ortiz's motion to dismiss for lack of speedy trial. In its order, the district court considered all of the *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), speedy trial factors and concluded that Mr. Ortiz was responsible for the majority of delays in the case. At his arraignment on April 12, 2012, Mr. Ortiz again pled not guilty and trial was set for September 25, 2012. On August 21, 2012, Mr. Ortiz filed a motion to reopen and reconsider any and all motions previously filed. That same day, upon the request of Mr. Ortiz, the trial was reset to October 2, 2012. On October 1, 2012, the district court considered Mr. Ortiz's motion to reopen and reconsider all previous motions. The district court denied review of those motions that were final under the initial action, granted several of the motions, and reserved ruling on the other issues for trial.

[¶27] At trial, the State's case centered on M.O.'s testimony that Mr. Ortiz, her grandfather, sexually assaulted her when she was a little girl. In his opening statement, Mr. Ortiz's counsel attacked M.O.'s motivation for making such allegations and questioned her credibility, suggesting she fabricated the report because she did not want to live with her father following the divorce of her parents. Defense counsel stated in his opening:

> What is really important that you are going to see, ladies and gentleman, is that the separation and the impending divorce that ensued from that separation has had a drastic effect on this young girl. It had a drastic effect on this young girl to the point that she has now made false allegations of sexual abuse.
>
> . . . .
>
> In fact, what's very important that you are going to see that this disclosure did not occur until this young lady felt she was

going to be ripped away from her mom and her mom's family and put into her father's family.

. . . .

So you're going to see through the years that this young lady said these things to adults, people of importance, and it didn't work. But still her dad was over here trying to get custody of her and possibly taking her away. That's what you're going to see, ladies and gentleman. That was the first time that she came out with this disclosure that her grandfather was sexually abusing her.

[¶28] The State rebutted those attacks by calling, as its first witness, forensic interviewer Lynn Huylar and introducing a 2006 forensic interview Ms. Huylar had conducted with M.O. The video highlighted the consistency of M.O.'s allegations dating back to 2006. The State contended that the forensic interview was admissible as a prior consistent statement. Mr. Ortiz's counsel objected to the timing of the introduction of the videotaped interview, arguing that the video should not be admitted until after M.O. had been cross-examined.[2] The district court denied Mr. Ortiz's objection on the grounds that Mr. Ortiz had already argued, in his opening statement, that M.O. had an improper motive and had fabricated her allegations. The district court found the video admissible as a prior consistent statement to rebut Mr. Ortiz's allegations of improper motive.

[¶29] Ms. Huylar's testimony included an introduction of the video and an explanation of forensic interviewing. Later, on cross-examination, Mr. Ortiz's counsel repeatedly and unsuccessfully attempted to solicit testimony from Ms. Huylar regarding M.O.'s credibility and truthfulness.

[¶30] The four-day jury trial concluded on October 5, 2012, 176 days after arraignment on the re-filed charges, and 892 days after his initial arrest. Mr. Ortiz was convicted on all three counts of second-degree sexual assault. Mr. Ortiz submitted a timely notice of appeal.

## DISCUSSION

### I. *Was Mr. Ortiz denied his right to a speedy trial?*

[¶31] Mr. Ortiz argues that his right to a speedy trial was violated. In the initial action, 125 days elapsed between Mr. Ortiz's arraignment and his signing of a waiver of his right to a speedy trial. In the second action, 173 days elapsed from arraignment to the

---

[2] Mr. Ortiz stipulated to the admissibility of the content of the interview.

6

beginning of trial on October 2, 2012. Excluding the five days between the State's dismissal and re-filing, 887 days elapsed between Mr. Ortiz's initial arrest and his final conviction on October 5, 2012. Considering all of these time periods, individually and cumulatively, where appropriate, we find no violation of Mr. Ortiz's right to a speedy trial.

[¶32] This Court performs a *de novo* review of speedy trial claims to ensure that the mandates of the rules of criminal procedure and constitutional guarantees have been met. *Almada v. State*, 994 P.2d 299, 304 (Wyo. 1999). Our analysis will address both the state and constitutional questions.

> We begin by calculating the time between defendant's arraignment and trial, excluding the time periods specified in W.R.Cr.P. 48(b)(3). Delays of fewer than 120 days are permissible. If a delay has exceeded 120 days, we determine whether the defendant has made a written demand for a speedy trial or otherwise vigorously asserted his rights under W.R.Cr.P. 48. If the defendant has not done so, we apply the four-part constitutional test articulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), and adopted in *Cosco v. State*, 503 P.2d 1403, 1405 (Wyo. 1972), *cert. denied*, 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973), to ensure that the defendant's constitutional guarantee to a speedy trial has been satisfied.

*Detheridge v. State*, 963 P.2d 233, 235 (Wyo. 1998) (citations omitted).[3]

## A.    W.R.Cr.P. 48(b)

[¶33] "A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule." W.R.Cr.P. 48 (b)(2). Calculating the 180-day provision of Rule 48 is a simple matter of arithmetic, beginning with arraignment and ending with commencement of trial, excluding any time periods specified in the rule. *Berry v. State*, 2004 WY 81, ¶ 21, 93 P.3d 222, 228 (Wyo. 2004). Where the State dismisses then re-files the charges, the 180-day period begins again from the second arraignment to trial. *Id*. at ¶ 22, at 228; *Hall v. State*, 911 P.2d 1364, 1370 (Wyo. 1996). In the present case, there were two separate proceedings, and therefore two separate calculations to consider under W.R.Cr.P. 48.

---

[3] *Detheridge* was decided under an earlier version of the rule. Rule 48(b) now permits 180 days between arraignment and trial.

[¶34] Mr. Ortiz was arrested on April 27, 2010, in the initial action, and released the next day. He was then arraigned on June 10, 2010. The original trial date was set for August 3, 2010, however it was reset more than ten times due to motions and requests for continuances by Mr. Ortiz.

[¶35] Mr. Ortiz filed a signed waiver of speedy trial on October 13, 2010, 125 days after his arraignment. He also filed another waiver of speedy trial on February 28, 2011.[4] Filing a signed waiver of speedy trial by the defendant effectively stops the clock pursuant to W.R.Cr.P. 48. *See McEwan v. State*, 2013 WY 158, ¶ 34, 314 P.3d 1160, 1169 (Wyo. 2013). Because Mr. Ortiz filed such a waiver on October 13, 2010, 125 days after his arraignment and well within the Rule 48(b) limit, his right to a speedy trial under Wyoming rules was not violated in the initial action.

[¶36] On January 5, 2012, the district court dismissed the charges in the initial action without prejudice. Five days later, the State re-filed charges against Mr. Ortiz under the statute in effect at the time of the crimes.[5] Mr. Ortiz was arraigned April 12, 2012. The trial began October 2, 2012, 173 days after arraignment, and within the 180-day limit provided in Rule 48(b).

[¶37] Because both actions fall within the permissible period specified in W.R.Cr.P. 48(b), we find no violation of Mr. Ortiz's right under the Wyoming Rules of Criminal Procedure.

## B. Constitutional Analysis

[¶38] We next turn to the question of whether Mr. Ortiz's constitutional right to a speedy trial was violated by the cumulative delay in the two proceedings.

[¶39] The Sixth Amendment guarantees every criminal defendant a speedy trial. U.S. Const. amend. VI; *Humphrey v. State*, 2008 WY 67, ¶ 20, 185 P.3d 1236, 1243 (Wyo. 2008). For its constitutional speedy trial analysis, this Court adopts the four-factor test articulated in *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972); *Cosco v. State*, 503 P.2d 1403, 1405 (Wyo. 1972), *cert. denied*, 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). The *Barker* test requires balancing (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Boucher v. State*, 2011 WY 2, ¶ 9, 245 P.3d 342, 348 (Wyo. 2011); *Strandlien v. State*, 2007 WY 66, ¶ 6, 156 P.3d 986, 990 (Wyo. 2007). No individual factor is dispositive. *Boucher*, 2011 WY 2, ¶ 9, 245 P.3d at 348. The

---

[4] Though Mr. Ortiz filed a motion to dismiss for lack of speedy trial on February 17, 2011, we find it irrelevant to this analysis. The motion specifically stated, "[T]his Motion is not brought based upon the proceeding since the Defendant was charged because he admits and stipulates that: He has filed a Waiver of Speedy Trial. . . ."

[5] Sexual assault in the second degree. Wyo. Stat. Ann. § 6-2-303(a)(v).

ultimate "inquiry is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Warner v. State*, 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo. 2001) (quoting *Wehr v. State*, 841 P.2d 104, 112 (Wyo. 1992)).

### 1. Length of Delay

[¶40] For purposes of the constitutional analysis, the speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs first. *Boucher*, 2011 WY 2, ¶ 10, 245 P.3d at 349. Dismissal and re-filing the charges does not restart the clock. *Id*. "[H]owever, the interim period between dismissal of charges and re-filing is not counted as long as the defendant is neither under arrest nor formally charged." *Id*. The right to a speedy trial "continues until the defendant is convicted, acquitted or a formal entry is made on the record of his case that he is no longer under indictment." *Berry*, 2004 WY 81, ¶ 32, 93 P.3d at 231 (quoting 4 Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, *Criminal Procedure* § 18.1(c), at 670-71 (2d ed. 1999)).

[¶41] Mr. Ortiz's initial arrest occurred on April 27, 2010, and he was convicted on October 5, 2012. Excluding the five days between the State's dismissal and re-filing, 887 days elapsed between Mr. Ortiz's initial arrest and his conviction. We previously held that a 500-day delay is presumptively prejudicial and warrants further analysis of the *Barker* factors. *Miller v. State*, 2009 WY 125, ¶ 39, 217 P.3d 793, 805 (Wyo. 2009) (citing *Campbell v. State*, 999 P.2d 649, 655-56 (Wyo. 2000)). Therefore, we will consider the remaining factors here.

### 2. Reason for Delay

[¶42] In reviewing the second factor, reason for delay, this Court examines which party was responsible for the delay. *Miller*, 2009 WY 125, ¶ 40, 217 P.3d at 805. "[D]elays attributable to the defendant may disentitle him to speedy trial safeguards." *Berry*, 2004 WY 81, ¶ 35, 93 P.3d at 232. "[D]elays attributable to changes in defense counsel, to the defendant's requests for continuances, and to the defendant's pretrial motions are all considered delays attributable to the defense." *Miller*, 2009 WY 125, ¶ 40, 217 P.3d at 805 (citing *Strandlien*, 2007 WY 66, ¶ 12, 156 P.3d at 991). With respect to the prosecution, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Berry*, 2004 WY 81, ¶ 36, 93 P.3d at 232 (quoting *Wehr*, 841 P.2d at 112-13).

[¶43] Our examination of the record reveals the majority of delays resulted from Mr. Ortiz's actions. In fact, Mr. Ortiz's disregard for his speedy trial rights is best exemplified by his counsel's response to the trial judge's speedy trial concerns at a July 14, 2011 status hearing, "[m]y client doesn't care. Whatever, Your Honor."

[¶44] Part of the delay was caused by Mr. Ortiz's countless improper praecipes. Prior to the State's dismissal of the original charges in the initial action, Mr. Ortiz filed multiple praecipes for subpoenas *duces tecum* for more than ten different individuals or organizations. In its order quashing all outstanding subpoenas, the district court noted that the praecipes failed to comply with W.R.Cr.P. 17(d), requiring all books, papers, documents and other objects of the subpoena to be delivered to the court for *in camera* review. Nevertheless, Mr. Ortiz continued to file subpoenas improperly requesting all documents be delivered directly to the defense. Once again, upon a motion by the State, the district court issued an order quashing these outstanding and defective subpoenas.

[¶45] Mr. Ortiz also filed numerous motions in the initial action. On January 7, 2011, Mr. Ortiz filed a motion to dismiss, arguing that his right to due process of law was violated because the trial transcript from Mr. Ortiz's son's divorce case was missing from court records. On January 12, 2011, Mr. Ortiz filed a motion to produce and a motion *in limine.* On February 17, 2011, Mr. Ortiz filed a motion to dismiss for lack of speedy trial. On June 3, 2011, Mr. Ortiz filed a motion to have the district court reexamine its earlier order providing for *in camera* review of DFS records. On August 25, 2011, Mr. Ortiz filed a motion requesting a hearing on whether the victim's testimony had been tainted. On September 8, 2011, Mr. Ortiz filed a motion to bifurcate the taint hearing. On September 14, 2011, Mr. Ortiz's new counsel filed an entry of appearance on his behalf.

[¶46] Responding to the numerous subpoenas, defective subpoenas, and motions, all delayed the course of the initial action and were caused by Mr. Ortiz. Additionally, our review of the record reveals at least ten times in the initial action that the trial date was continued at Mr. Ortiz's request.

[¶47] After the State re-filed the charge in the second action, Mr. Ortiz filed two motions to dismiss for lack of speedy trial, the first filed January 18, 2012, and the second filed February 9, 2012. He subsequently filed two motions to continue arraignment on February 28 and March 26, 2012, and a peremptory disqualification of Judge Campbell on March 2, 2012.

[¶48] On March 20, 2012, 693 days after arrest, the district court reviewed Mr. Ortiz's two motions to dismiss for lack of speedy trial. At the hearing, the district court found most of the delays attributable to Mr. Ortiz:

> During my recitation of the pleadings in the first file, I will note that there are dozens of pleadings filed by the defense beginning June 8, 2010 . . . .
>
> There are also, and I haven't counted these either, but I would guess a dozen or two dozen pr[a]ecipes for subpoena

10

duces tecum filed by [defense counsel] seeking the attendance of various people either at his office or at the courthouse. . . .

Those same subpoenas duces tecum were filed repetitively during the proceeding in the first case. The State was obliged to move to quash those subpoenas as were attorneys representing the people who had been subpoenaed.

. . . .

The transcript reveals that . . . [the district court] commented to the effect, "The motions don't comply with Rule 17 . . . ."

Despite that comment, [defense counsel] continued to file subpoena duces tecum . . . all essentially on the same group of people.

It took time for the individuals upon whom the subpoenas were served to respond to the subpoenas, to arrange for attorneys to represent them, to file motions to quash those subpoenas, for the State to object to the subpoena[s].

. . . .

All of these actions by the defense, . . . consumed time.

[¶49]  Finally, in its order denying Mr. Ortiz's two motions for lack of speedy trial, dated April 9, 2012, the district court found:

The delay of more than 693 days does not weigh in favor of [Mr. Ortiz] because [Mr. Ortiz] has been responsible for almost all of the delays between his arrest and his upcoming trial. He has filed numerous pretrial motions, numerous pr[a]ecipes for subpoena *duces tecum* (despite being warned that they will not be issued unless they are in accordance with the rules), and requested multiple continuances.

[¶50]  In spite of the district court's admonition, on August 21, 2012, Mr. Ortiz filed a motion to reopen and reconsider any and all motions previously filed. The motion lists all of Mr. Ortiz's previous motions and requests for reconsideration, even for those motions that were granted. The district court eventually considered this motion on

October 1, 2012, one day before trial, and denied review of those motions that were final under the initial action, and reserved ruling on the other issues for trial.

[¶51]  There are only two apparent delays attributable to the State: (1) the dismissal and re-filing of charges against Mr. Ortiz, which resulted in a delay of five days; and (2) the May 12, 2011 motion to vacate trial setting and reset trial to give the State and defense more time for plea negotiations.  These delays hardly qualify as "deliberate attempt[s] to delay the trial in order to hamper the defense." *Berry*, 2004 WY 81, ¶ 36, 93 P.3d at 232 (quoting *Wehr*, 841 P.2d at 112-13).  The remaining delays in this case are attributable to Mr. Ortiz and therefore this factor weighs heavily in favor of the State.

### 3.  Defendant's Assertion of the Right

[¶52]  The third factor to consider is the defendant's assertion of his right to a speedy trial.  *Boucher*, 2011 WY 2, ¶ 9, 245 P.3d at 348.  The failure to assert the right to a speedy trial, while not necessary to prove a violation of that right, weighs heavily in determining whether that right was violated.  *Strandlien*, 2007 WY 66, ¶ 13, 156 P.3d at 991; *Barker*, 407 U.S. at 532, 92 S.Ct. at 2192-93.

[¶53]  Mr. Ortiz did assert his right to a speedy trial by filing three motions to dismiss for lack of speedy trial.  However, the first motion to dismiss was followed, eleven days later, by Mr. Ortiz filing a waiver of speedy trial; and, his final motion was followed by two motions to continue arraignment, one motion to continue the trial, a peremptory disqualification of the sitting judge, and his motion to reconsider all previous motions.

[¶54]  We recognize that, "[a] signed waiver of speedy trial does not give the State free reign to delay a defendant's trial unreasonably for all time." *Miller*, 2009 WY 125, ¶ 36, 217 P.3d at 804.  However, when the defendant has waived his speedy trial right, and then proceeds to cause numerous delays, those facts weigh substantially in favor of the State.

[¶55]  Furthermore, all three of Mr. Ortiz's motions to dismiss for lack of speedy trial were premised on prearrest delay, rather than the post-arrest period that is the focus of our speedy trial constitutional analysis.  In his first motion to dismiss, Mr. Ortiz conceded:

> 1. That this Motion is not brought based upon the proceeding since the Defendant was charged because he admits and stipulates that:
>
>    a.  He has filed a Waiver of Speedy Trial[.]
>
>    b.  There are pending Motions that need to be resolved.

12

> c. There has been good cause and it was in the interests of [j]ustice that the [t]rial date was continued.

Instead, Mr. Ortiz's motion asserted that the "delay since the date of the initial reporting of the allegations to the date of the information being filed," was unconstitutional. In his other two motions to dismiss, Mr. Ortiz again argues only that he was prejudiced by the delay *prior* to charging.

[¶56] The speedy trial clock begins to run upon the date of arrest, indictment, or filing of information, whichever occurs first. *Boucher*, 2011 WY 2, ¶ 10, 245 P.3d at 349. This Court has found that the speedy trial clause has no application to prearrest delays. *Black v. State*, 820 P.2d 969, 970 (Wyo. 1991). In *Black*, this Court adopted the position of the United States Supreme Court.

> [T]hat as far as the Speedy Trial Clause of the Sixth Amendment is concerned, such delay is wholly irrelevant, since our analysis of the language, history, and purposes of the Clause persuaded us that only "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections" of that provision.

820 P.2d at 970 (quoting *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971)).

[¶57] Because all three of Mr. Ortiz's speedy trial motions argue prearrest delay, they do not assert the right to a speedy trial as provided by the Sixth Amendment. While such prearrest delays do implicate the due process rights of the Fifth Amendment to the United States Constitution, Mr. Ortiz failed to present any cogent argument regarding a due process violation. *Sonnett v. First Am. Title Ins. Co.*, 2013 WY 106, ¶ 26, 309 P.3d 799, 808 (Wyo. 2013) (This Court will not address arguments that lack any cogent argument or citation to relevant authority.).

[¶58] Our analysis of the third factor finds that Mr. Ortiz waived his speedy trial rights twice. His actions subsequent to asserting his speedy trial right caused numerous procedural delays, and, furthermore, his assertions erroneously applied prearrest delay to a speedy trial analysis. Taking these facts into account, we find Mr. Ortiz's assertion of his speedy trial insufficient to weigh in his favor.

### 4. Prejudice to Defendant

[¶59] The fourth factor requires us to consider whether the delay prejudiced Mr. Ortiz. To evaluate prejudice for a speedy trial analysis, we consider, "(1) lengthy pretrial incarceration; (2) pretrial anxiety; and, (3) impairment of the defense." *Berry*, 2004 WY 81, ¶ 46, 93 P.3d at 237 (quoting *Harvey v. State*, 774 P.2d 87, 96 (Wyo. 1999)); *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

[¶60] First, Mr. Ortiz makes no argument regarding his pretrial incarceration, and therefore we will not consider it.[6]

[¶61] Second, with regard to pretrial anxiety, this Court has said, "because a certain amount of pretrial anxiety naturally exists, a defendant must demonstrate he suffered prejudice in an extraordinary or unusual manner." *Miller*, 2009 WY 125, ¶ 44, 217 P.3d at 805 (internal quotes and citations omitted). Furthermore, a bare assertion of anxiety will not suffice. *Id*. at ¶ 44, at 806. Nevertheless, a bare assertion is all that Mr. Ortiz presents with this passing reference: "[t]he victim, the witness and the defendant all suffered pre-trial anxiety as well as impairment of the defense by fading memories, evidence and the prosecutions [sic] play on the fading memories to infer guilt." Without further articulation, this Court places little significance on this bare assertion.

[¶62] Third, and most important of the prejudice factors, we consider impairment of the defense. *Miller*, 2009 WY 125, ¶ 45, 217 P.3d at 806. "This inquiry is designed to prevent a defense from becoming impaired by death, disappearance, or memory loss of witnesses for the defense . . . ." *Id*.

[¶63] Mr. Ortiz argues that the delay caused memory loss to him and the alleged victim. He offers no proof as to how those memories were impaired from the time of his initial arrest to the trial -- the period we are concerned with under our constitutional speedy trial analysis. Instead, Mr. Ortiz points to the time prior to his arrest, which is irrelevant to our analysis.

[¶64] Mr. Ortiz has failed to establish any of the three prejudice factors under the fourth and final *Barker* factor.

[¶65] After considering all four factors of the *Barker* speedy trial constitutional analysis, we conclude that the delay did not "substantially impair[] the right of the accused to a fair trial." *Warner*, 2001 WY 67, ¶ 10, 28 P.3d at 26 (quoting *Wehr*, 841 P.2d at 112). While there was a considerable delay between Mr. Ortiz's initial arrest and trial, the delay was primarily attributable to Mr. Ortiz. He also waived his right to a speedy trial twice and

---

[6] This is probably because throughout the proceedings, Mr. Ortiz only spent two days in jail. Mr. Ortiz was released on bond on the day following his initial arrest.

caused numerous procedural delays indicating a less than vigorous assertion of his right. Finally, he has failed to demonstrate prejudice to his defense as a result of the delay.

## II. *Did the district court properly admit forensic interview evidence as a prior consistent statement?*

[¶66]  The trial court admitted into evidence a videotaped interview of the victim, M.O., with forensic interviewer Ms. Huylar as a prior consistent statement.  Mr. Ortiz argues that the evidence is (1) impermissible hearsay, and (2) M.O. should have been subject to cross-examination before admission of a prior consistent statement.[7]  We find that the trial court properly admitted the video.

[¶67]  This Court reviews alleged errors relating to the admission of evidence for an abuse of discretion.  *Marquess v. State*, 2011 WY 95, ¶ 12, 256 P.3d 506, 510 (Wyo. 2011).  "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner."  *Lancaster v. State*, 2002 WY 45, ¶ 11, 43 P.3d 80, 87 (Wyo. 2002) (citing *Trujillo v. State*, 2 P.3d 567, 571 (Wyo. 2000)).  A trial court's evidentiary rulings "are entitled to considerable deference," and will not be reversed "so long as there exists a legitimate basis for the trial court's ruling . . . ." *Armstrong v. Hrabal*, 2004 WY 39, ¶ 10, 87 P.3d 1226, 1230 (Wyo. 2004) (internal quotes and citations omitted).

[¶68]  Prior consistent statements are not considered hearsay and may be admissible if they meet four criteria: (1) the declarant testifies at trial; (2) the declarant is subject to cross-examination; (3) the prior statement is consistent with the declarant's trial testimony; and (4) the prior statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.  W.R.E. 801(d)(1); *Maier v. State*, 2012 WY 50, ¶ 11, 273 P.3d 1084, 1087 (Wyo. 2012).

[¶69]  The forensic video interview met all four prior consistent statement requirements. M.O. testified and was subject to cross-examination.  The video interview matched her trial testimony -- that Mr. Ortiz had sexually molested her when she was a child.  Lastly, the video interview rebutted Mr. Ortiz's claim of fabrication.

[¶70]  "The charge of fabrication or improper motive need not come only as a specific allegation during cross-examination; rather, it may be made by implication or innuendo, and it may be found in the 'thrust' of the defenses and testimony presented."  *Maier*, 2012 WY 50, ¶ 13, 273 P.3d at 1088 (quoting *Lancaster*, 2002 WY 45, ¶ 18, 43 P.3d at

---

[7] Mr. Ortiz also contends the video was improperly admitted because M.O. was not competent to testify. Because he provides no cogent argument to support this contention, we will not address it. *Sonnett*, 2013 WY 106, ¶ 26, 309 P.3d at 808.

89).  The opening statements made by the defense counsel suggested that M.O. fabricated the sexual abuse allegation against her grandfather so she would not have to live with her father.  The forensic video was admitted to rebut this accusation, demonstrating the consistency of M.O.'s statements from 2006 through the trial.

[¶71]  Mr. Ortiz contends that the State could present the interview evidence only after he cross-examined M.O.[8]  In his brief, Mr. Ortiz argues, "other authority provides good reasoning concerning whether a temporal requirement should be applied in admitting such evidence[.]"  Mr. Ortiz provides none of these authorities.

[¶72]  The thrust of the defense, as presented in Mr. Ortiz's opening statement, was that the victim had reason to fabricate the charges against him.  Once this allegation of fabrication was introduced, the State was free to introduce video evidence as a prior consistent statement, even if that introduction occurred before M.O.'s cross-examination.

### III.  *Did testimony from a forensic interviewer or a detective improperly vouch for the credibility of the victim?*

[¶73]  Mr. Ortiz argues that the expert testimony of Ms. Huylar and Detective Eddy impermissibly vouched for the credibility of the victim.  We find otherwise.

[¶74]  Where a defendant fails to assert an objection to challenged testimony, as here, the reviewing court applies a plain error standard of review.  *Large v. State*, 2008 WY 22, ¶ 31, 177 P.3d 807, 816 (Wyo. 2008).  "This standard requires the alleged error 1) be clearly reflected in the record, 2) be a violation of a clear and unequivocal, not merely arguable, rule of law, and 3) deny an appellant a substantial right resulting in material prejudice."  *Id.* (quoting *Sanderson v. State*, 2007 WY 127, ¶ 16, 165 P.3d 83, 89 (Wyo. 2007)).  Finding plain error is an exceptional circumstance, and it will only be found where the error seriously affects the fairness or integrity of judicial proceedings.  *Id.* at ¶ 31, 177 P.3d at 816-17.  "The appellant bears the burden of proving plain error."  *Marquess*, 2011 WY 95, ¶ 9, 256 P.3d at 509 (quoting *Christensen v. State*, 2010 WY 95, ¶ 6, 234 P.3d 1229, 1230 (Wyo. 2010)).

[¶75]  "It is well established in Wyoming that an expert witness cannot vouch for the truthfulness or credibility of an alleged victim."  *Seward v. State*, 2003 WY 116, ¶ 19, 76 P.3d 805, 814 (Wyo. 2003) (quoting *Zabel v. State*, 765 P.2d 357, 360 (Wyo. 1988)).  "[E]xpert testimony that discusses the behavior and characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible."  *Id.* at ¶ 26, 76 P.3d at 816-17 (quoting *Rivera v. State*, 840 P.2d 933, 939 (Wyo. 1992)).  This Court has reasoned that such testimony "assists the jury in understanding some of the aspects of the behavior of victims and, so long as there is no

---

[8] At trial, Mr. Ortiz objected *only* to the timing of the statement.  He stipulated to the content.

16

comment on the credibility or truthfulness of the victims, it does not invade the province of the jury." *Id*. at ¶ 27, at 817 (quoting *Rivera*, 840 P.2d at 939).

[¶76] On direct examination, Ms. Huylar testified that forensic interviews enable children to tell their story by asking non-leading, open-ended questions. She explained her interview process -- rapport building, assessment of verbal skills, and other developmental assessments. She also explained that she evaluates whether a child has been influenced by a third party. Ms. Huylar went on to discuss how children typically disclose that something happened to them, and when, how, and why children disclose. Finally, Ms. Huylar testified concerning the development of children's memory, how memory evolves, what children remember, and emotional responses associated with memories. At every juncture in her testimony, Ms. Huylar remained within the permissible domain of generalized expert knowledge. In fact, our review of her testimony notes that Ms. Huylar only mentioned the victim, M.O., in order to confirm that Ms. Huylar actually interviewed M.O.

[¶77] In his brief, Mr. Ortiz provides a laundry list of fragments of Ms. Huylar's testimony to support his argument that she impermissibly vouched for M.O.'s credibility. He inserts confusing and conclusory parentheticals following each quote:

> "[A] forensic interview is a way to help kids tell their story in a manner that does not taint, influence or tamper with in any way"; "I do rapport building, developmental assessment to make them comfortable (coercion); "I lay down the rules" (position of authority), "I make sure they know the difference between truth and lies and make them promise to tell only the truth" (coercion); "I assess for coaching, but I can't bring up the topic or its coaching" (she brought it up) . . . "false allegations do occur[.]"

(Citations omitted.)

[¶78] Mr. Ortiz makes a conclusory statement that, "[t]his type of bolstering has been deemed reversible error[,]" citing to *Zabel v. State*, 765 P.2d 357 (Wyo. 1988). *Zabel*, however, is distinguishable from this case. In *Zabel*, an appeal of a conviction for immodest, immoral and indecent liberties, this Court found that the admission of expert testimony on the victim's credibility amounted to reversible error. 765 P.2d at 358. We found that the expert witness first made objective statements about the veracity of child-victims and then proceeded to apply those objectives to the victim in the case.

> A:   . . . I use [] example children out to harm someone. I very much look at those ambivalent feelings because if, in

17

fact, the issue is 'Let's get this person,' there may be a motive
behind it and I look for what's known as secondary gains.

Q: Now, a secondary gain–

A: A motive–

Q: –is a motive to fabricate?

A: That is correct, something that the child is going to gain,
in reporting this. **Taking [the younger girl] as an example,
in her case it was extremely difficult for her to be able to
report this, so it was actually a detriment to report**[.]

*Zabel*, 765 P.2d at 359 (emphasis added). Unlike in *Zabel*, here, the trial transcript indicates that Ms. Huylar gave generic and objective forensic interview information only, merely laying the foundation for introduction of the video interview.

[¶79] Mr. Ortiz also cites *Seward* in support of his argument that Ms. Huylar's expert testimony improperly vouched for the victim's credibility. In *Seward*, this Court found that the same Ms. Huylar presented "truthfulness criteria" testimony and then proceeded to assess the credibility of the victim's interview responses based on those criteria. 2003 WY 116, ¶ 20, 76 P.3d at 814. Specifically, in *Seward*, Ms. Huylar explained the "very purpose of a forensic interview is to assess whether the victim's disclosure was credible or not," and then she proceeded to describe "significant" contextual details that supported her "conclusion" that the victim would "have had to have some kind of experience to be able to describe that." *Id.* (internal quotes omitted). In *Seward*, Ms. Huylar crossed the boundary from general expert testimony into case-specific application. Here that did not happen, in spite of defense counsel's best efforts.[9]

[¶80] In his cross-examination of Ms. Huylar, Mr. Ortiz's counsel encouraged Ms. Huylar to vouch for the victim's credibility. Ms. Huylar consistently maintained that credibility determinations were not her responsibility.

---

[9] This is not the first time Mr. Ortiz's counsel has had difficulty in distinguishing between Ms. Huylar's testimony in this case and her testimony in *Seward*. In his original Appellant's Brief filed in this appeal, he included Ms. Huylar's testimony in *Seward* without attributing it to that case, but instead making it appear to have been her testimony in this case. After this was brought to this Court's attention by motion of the State, this Court, without opining whether the "misrepresentations were intentional, inadvertent, or otherwise," entered its order imposing a $500 sanction and requiring Mr. Ortiz's counsel to "file a revised Appellant's Brief that does not include the misrepresentations . . . ."

Q: And so not every child that comes to you is telling the truth; is that right?

A: [I]t's not my role to determine if [a child] is telling the truth, and so that's not my determination. My determination is just to help them tell a story if they have a story to tell.

. . . .

Q: [Y]ou will have conversations with [law enforcement] and tell them whether you think this case should go forward or not, correct?

A: . . . My job is not to tell whether or not I feel [a criminal investigation] should go forward or not at all.

. . . .

Q: [I]f someone told you that they did have a conversation with somebody about the specific sexual encounter and law enforcement goes and talks to that person about it and this person again says, "It didn't happen." That would cause you some concern about the validity of the statement?

A: Again, it is not my job to determine the validity of a child's sex statement. . . .

Q: So it's not your job to determine the validity of a child's sex statement?

A: No, that's left up to the Judge and jury to determine whether or not children are telling the truth or not.

[¶81] We reject attempts by a defendant to turn a trial strategy into an appellate error. *See McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 54, 311 P.3d 608, 621 (Wyo. 2013) ("The doctrine of invited error prohibits a party from raising on appeal alleged trial court errors that were induced by that party's actions."); *Pendleton v. State*, 2008 WY 36, ¶ 16, 180 P.3d 212, 217-18 (Wyo. 2008).

[¶82] Ms. Huylar's expert testimony generally informed the jury of the behavior of young victims of sexual assault. It provided a context for the introduction of the video of the forensic interview she conducted with M.O. in 2006. She resisted efforts by Mr.

19

Ortiz's counsel to elicit testimony regarding M.O.'s credibility. We find that Ms. Huylar's testimony was properly admitted by the trial court.

[¶83] Additionally, Mr. Ortiz contends that Officer Eddy improperly vouched for M.O.'s credibility. The State points out, and this Court finds, that Mr. Ortiz has failed to identify facts or to present cogent argument to support this contention. This Court has long held:

> An appellant is required to present this court with relevant authority and cogent argument. It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there. The appellant, at minimum, must attempt to relate the rule of law he depends upon to the facts of his case.

*Sonnett*, 2013 WY 106, ¶ 26, 309 P.3d at 808 (quoting *Elder v. Jones*, 608 P.2d 654, 660 (Wyo. 1980)).

[¶84] Mr. Ortiz provides only a series of fragmented and inaccurate citations from Officer Eddy's testimony. For example, he cites Officer Eddy as stating, "this case needed to be re-evaluated due to more details and witnesses," when our review of the transcript reveals that this was actually a question posed by defense counsel on cross-examination.

[¶85] Mr. Ortiz fails to accurately cite to any testimony which might be objectionable, or to provide legal analysis applying the law to facts which might lead us to conclude that Detective Eddy engaged in impermissible credibility vouching, and therefore we decline to address this argument.[10]

## IV. *Was the Bill of Particulars sufficient for Mr. Ortiz to prepare a defense?*

[¶86] Mr. Ortiz argues that the range of dates contained in the Bill of Particulars was vague, preventing him from adequately preparing a defense. We find that the Bill of Particulars was sufficient.

[¶87] "Because the right to notice of criminal charges is of constitutional magnitude and the determination on the adequacy of the notice is a question of law, we review the issue *de novo*." *Heywood v. State*, 2009 WY 70, ¶ 4, 208 P.3d 71, 72 (Wyo. 2009).

---

[10] Mr. Ortiz also claims that the prosecutor improperly vouched for the victim's credibility. Again, Mr. Ortiz provides an inadequate citation to the record and no cogent argument that would support this allegation. We therefore decline to address it.

[¶88] This Court has held "that where the specific date is not a required element of the crime, then alleging a general time period in lieu of a specific date, is sufficient to give a defendant notice and allow him to adequately prepare a defense." *Heywood*, 2009 WY 70, ¶ 8, 208 P.3d at 73 (quoting *Wease v. State*, 2007 WY 176, ¶ 44, 170 P.3d 94, 108 (Wyo. 2007)). Furthermore, in the context of child sexual abuse cases, "young children cannot be expected to be exact regarding times and dates," and, it is sufficient to "establish the transaction rather than the exact date or dates in question." *Id*. at ¶ 8, 208 P.3d at 73.

[¶89] Here, the Bill of Particulars alleged that Mr. Ortiz committed second-degree sexual assault three times against M.O. It explained that Mr. Ortiz digitally penetrated M.O., and described the clothes she was wearing at the time. It also provided a range of dates. These details sufficiently cover the requisite elements of the alleged crime, and taken together with the Information and Affidavit of Probable Cause, were sufficient to allow Mr. Ortiz to prepare for trial.

## V.   *Did the circuit court abuse its discretion when it granted an ex parte motion quashing Mr. Ortiz's subpoena to call the victim and her mother as witnesses at a preliminary hearing?*

[¶90] Mr. Ortiz attempted to subpoena the victim and her mother to appear at the January 26, 2012 preliminary hearing. On the same day, the State filed an *ex parte* motion to quash, stating in part:

> 3) Defendant's counsel has subpoenaed the victim and the victim's mother for preliminary examination in order to have two chances to examine the witnesses;
>
> 4) Defendant's counsel intends to go on a fishing expedition and to attempt to discredit the victim and her mother, tactics that are improper for purposes of a preliminary examination.

[¶91] The circuit court judge signed the order quashing the subpoenas *ex parte*, prior to the preliminary hearing and without service of the motion on Mr. Ortiz. We find that the circuit court committed harmless error.

[¶92] This Court reviews rulings on pretrial motions, such as a motion to quash, for an abuse of discretion. *Schreibvogel v. State*, 2010 WY 45, ¶ 12, 228 P. 3d 874, 880 (Wyo. 2010). This standard of review requires this Court to consider the reasonableness of the trial court's ruling on the matter. *Id*.

21

[¶93]   Determining probable cause is the purpose of the preliminary hearing.  *See Madrid v. State*, 910 P.2d 1340, 1343 (Wyo. 1996).  Wyoming Rule of Criminal Procedure 5.1(b) states, "[i]f from the evidence it appears that there is probable cause to believe that the charged offense or lesser included offense has been committed and that the defendant committed it, the judicial officer shall enter an order so finding and the case shall be transferred to the district court for further proceedings."  In *Madrid*, this Court explained:

> Rule 5.1(b), W.R.Cr.P., provides an accused the right to subpoena and call witnesses during his preliminary hearing, but this right is not absolute.  This right must be viewed in light of the true constitutional purpose of the preliminary hearing, which is to obtain a determination by a neutral, detached fact finder that there is probable cause to believe a crime has been committed and that the defendant committed it.  And although some discovery is the inevitable by-product of a preliminary hearing, discovery is not the purpose of the hearing.  Thus, discretion is left to the court to determine whether or not the purpose for which a defendant seeks to introduce testimony from a witness whom he has subpoenaed fits within the realm of discovery rather than the determination of probable cause.  To this end, we have stated that it is incumbent upon counsel to explain the relevance to the issue of probable cause of the testimony he seeks to introduce at the preliminary hearing, pursuant to a sufficient offer of proof.

*Madrid*, 910 P.2d at 1343 (citations omitted).

[¶94]   W.R.Cr.P. 49(a) requires that written motions be served upon each of the parties.  Therefore, pursuant to Rule 49(a), the circuit court erred when it ruled on an *ex parte* motion to quash the subpoenas for M.O. and her mother.  Nevertheless, because ample opportunity was afforded to Mr. Ortiz to refute the motion and offer proof as to why M.O. and her mother should be able to testify at the preliminary hearing, we find that the circuit court did not abuse its discretion and the error was harmless.

[¶95]   At the hearing, the circuit court provided Mr. Ortiz the opportunity to make an offer of proof as to why the testimony of the victim and her mother would be relevant to a determination of probable cause.  Mr. Ortiz failed to make such a showing and the order was filed that same day.

[¶96]   On appeal, Mr. Ortiz insists that this process "deprived appellant of his constitutional rights to confront the witnesses against him . . . ."  He further argues that quashing his subpoena deprived him of the opportunity to challenge the competency and

credibility of witnesses at the preliminary hearing. As noted above, *see supra* ¶ 93, the purpose of the preliminary hearing is not to engage in discovery, or determine competency or credibility -- it is to determine probable cause. "Questions of credibility and weight of the evidence are appropriately determined at trial, and there is no due process requirement for a determination of these issues in the course of determining probable cause." *Almada*, 994 P.2d at 303. Indeed, Mr. Ortiz was later given the opportunity to confront and attack the credibility of M.O. and her mother at trial.

[¶97] Courts should grant *ex parte* motions to quash only in exceptional circumstances, and where substantial rights are not affected. This was not an exceptional circumstance and the motion should have been served on Mr. Ortiz. However, this Court finds that in light of Mr. Ortiz's opportunity and failure to make an offer of proof that the sought-after testimony would serve any legitimate preliminary hearing purposes, and the fact that the circuit court's ruling did not affect a substantial right -- Mr. Ortiz would still be able to confront those witnesses at trial -- the circuit court merely committed harmless error and did not abuse its discretion.

## VI. *Did the district court abuse its discretion when it denied admission of sexualized behavior evidence on relevancy and hearsay grounds?*

[¶98] At trial, Mr. Ortiz attempted to present testimony from a relative who had been told by her daughter that the victim's younger half-siblings had behaved in an inappropriate, sexualized manner. The district court denied the admission of this evidence, ruling that the evidence lacked relevance and was hearsay.

[¶99] Evidentiary rulings are within the sound discretion of the trial court. *Silva v. State*, 2012 WY 37, ¶ 14, 271 P.3d 443, 447 (Wyo. 2012). In the absence of a clear abuse of discretion, the trial court's evidentiary rulings will not be disturbed. *Id.* at ¶ 14, at 448. A trial court's evidentiary rulings "'are entitled to considerable deference,' and will not be reversed on appeal so long as 'there exists a legitimate basis for the trial court's ruling. . . .'" *Lancaster*, 2002 WY 45, ¶ 12, 43 P.3d at 87 (quoting *Robinson v. State*, 11 P.3d 361, 367 (Wyo. 2000)).

[¶100] First, the relative's testimony regarding what her daughter allegedly told her about the sexualized behavior of M.O.'s siblings is inadmissible hearsay.[11] Because this testimony consisted of out-of-court statements offered to prove that the children acted in an inappropriate and sexualized manner -- the truth of the matter asserted -- the district court properly ruled that the evidence proffered was inadmissible hearsay. While Mr. Ortiz insists that the testimony qualified as an exception to hearsay under W.R.E.

---

[11] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801. Hearsay is generally inadmissible. W.R.E. 802.

804(b)(3) (statement against interest), 804(b)(4) (statement of personal or family history), and 804(b)(6) (other exceptions), he offers no basis to apply those exceptions and we find none.

[¶101] Second, the trial court correctly ruled the testimony was not relevant.[12] Mr. Ortiz contends the purpose of the testimony was to provide evidence that M.O.'s siblings were also the victims of sexual assault by an unknown third party. Mr. Ortiz did not have an expert witness available to testify that the behavior allegedly witnessed is indicative of sexual assault. Even if such a connection were established, it does not follow that Mr. Ortiz did not sexually assault M.O. To prove that, the jury would have had to conclude that the unknown person who may have assaulted the other children also assaulted M.O., and that Mr. Ortiz did not. Furthermore, the alleged conduct of M.O.'s siblings occurred ten years after M.O. was sexually abused and five years after her initial disclosure. The gap between the proffered evidence and Mr. Ortiz's suggested conclusion would require too much speculation and confuse the jury. The district court recognized this, commenting:

> This is all too remote. It's confusing to me and I do this for a living. How is the jury going to understand the importance of these interrelations without any professional or technical expertise explaining the connection between the existence of the behavior you're suggesting that has taken place and abuse by an unknown third person? I'm having trouble following it.

[¶102] Because the testimony would have been hearsay, was of doubtful relevance, and would have unnecessarily confused the jury, the district court did not abuse its discretion in finding such evidence inadmissible at trial.

**VII.** *Did the State commit prosecutorial misconduct when it referenced a non-religious quote from a church sign in its opening statement?*

[¶103] Mr. Ortiz argues that the State committed prosecutorial misconduct by making "religiously charged" statements during opening statements. The prosecutor remarked:

> A couple weeks ago I was driving on Pershing, and I don't know if you do this, but I read the signs out in front of the churches. They have bits of wisdom on their signs. Because this case has been in my life so much, the sign kind

---

[12] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. "Evidence which is not relevant is not admissible." W.R.E. 402.

of resonated with me and with what Mr. Custis said.[13] The sign said, "Courage does not always roar; sometimes it whispers. Listen twice." I think as you hear the evidence, it will resonate with you as well.

We find no prosecutorial misconduct in this statement.

[¶104] "The general rule in Wyoming is that a failure to interject a timely objection to an allegedly improper argument is treated as a waiver, unless the misconduct is so flagrant as to constitute plain error and require reversal." *Armstrong v. State*, 826 P.2d 1106, 1115 (Wyo. 1992) (citing *Jeschke v. State*, 642 P.2d 1298, 1301 (Wyo. 1982)). Because there was no objection at trial, this Court reviews Mr. Ortiz's allegations of prosecutorial misconduct for plain error. *Maier*, 2012 WY 50, ¶ 20, 273 P.3d at 1090. Plain error exists when: "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Sweet v. State*, 2010 WY 87, ¶ 22, 234 P.3d 1193, 1202 (Wyo. 2010). Reversal as a result of prosecutorial misconduct is not warranted unless a reasonable probability exists that absent the error the defendant may have enjoyed a more favorable verdict. *Haynes v. State*, 2008 WY 75, ¶ 23, 186 P.3d 1204, 1210 (Wyo. 2008).

[¶105] While this Court cannot find any *per se* prohibition against the use of religious statements, it is well established that "[g]reat latitude is allowed counsel in argument of cases, but counsel must . . . not make statements calculated to inflame, prejudice or mislead the jury. . . ." *Armstrong*, 826 P.2d at 1115-16 (quoting *State v. Hays*, 408 S.E.2d 614, 624 (W. Va. 1991).

[¶106] We find no inflammation or prejudice in the prosecutor's statement. The quote itself is not religious.[14] Review of the record indicates that this statement was a response to Mr. Ortiz's counsel's opening statement, in which he warned the jury that they would hear only one person's testimony (the victim) of what she thinks happened. We therefore read the statements as explaining to the jury that the case does not involve overwhelming evidence, but the voice of one young girl. This is no more than an admonishment to the jury to listen carefully to the evidence presented. The fact that the quote was on a church billboard does not raise it to an inflaming or prejudicial level. Furthermore, Mr. Ortiz offers us no basis to conclude that, absent these statements, the outcome of the trial would have been different.

---

[13] This statement is in reference to Mr. Ortiz's counsel's remarks in voir dire that the only evidence that will be presented against his client is the word of the victim.

[14] The State points us to the fact that the quote may be a modification of an original from an art and inspirational quotes book having nothing to do with religion, which says: "Courage Doesn't Always Roar. Sometimes courage is the quiet voice at the end of the day saying, 'I will try again tomorrow.'" Mary Anne Radmacher, available at http://www.maryanneradmacher.net/ (last visited, May 5, 2014).

25

[¶107]   The prosecution's reference violated no rule of law, nor did it result in the denial of a substantial right resulting in material prejudice.  We therefore find no plain error in the prosecutor's opening statement.

## CONCLUSION

[¶108]   Mr. Ortiz has presented no basis to reverse on any of the issues he raised on appeal.  The conviction is affirmed.